**GABLES BY THE SEA, INC., a**
**Florida corporation,**

v.

**Emmett C. LEE, Jr., Colonel, U. S. Army Corps of Engineers, and District Engineer, Department of the Army, Jacksonville, Florida District, et al.**

Civ. No. 73–752–WM.

United States District Court,
S. D. Florida.

Oct. 16, 1973.

Sibley, Giblin, Levenson & Ward, Miami Beach, Fla., for plaintiff.

Robert W. Rust, U. S. Atty., by Robert N. Reynolds, Asst. U. S. Atty., Miami, Fla., James R. Walpole, Atty., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

MEHRTENS, District Judge.

This suit, brought against the United States and certain named individuals is, in essence, a challenge of the administrative determination made by the Corps of Engineers to deny the plaintiff's application for a "dredge and fill permit" pursuant to 33 U.S.C. § 403. A brief account of the facts alleged in the Complaint will precede a discussion of the legal issues.

In 1956 the Corps of Engineers issued a dredge and fill permit to Gables Venetian Waterway, Inc., predecessor in title to plaintiff in the instant action. The permit authorized dredging and filling operations on the western shore of Biscayne Bay, a navigable water of the United States. By its terms, the permit had an expiration date of December 31, 1959. Several revisions in the application were made and extensions of the permit granted from 1959 through 1965. In the fall of 1965 plaintiff again requested an extension of the permit, in order to complete the work, to December 31, 1968. The Corps granted this extension. No further requests were made for extensions prior to the expiration date and plaintiff's permit expired December 31, 1968.

Approximately four years later[1] on July 28, 1972, a representative of Gables submitted a permit application to the Corps seeking to conduct dredge and fill activities in the same vicinity of the prior dredge and fill operations. Pursuant to its standard procedures, the Corps issued a public notice of the application. The Corps then received over 500 comments, including reports from State and Federal agencies, in opposition to the proposed project. In response to such adverse comments, Gables submitted a technical report to the Corps attempting to show that the permit should be is-

---

1. Apparently after the Corps granted the permit extension to December 31, 1968, Gables was involved in a series of litigation in the Florida state courts involving the issu-

ance of certain State permits and certification. The State court litigation has no effect on the instant case.

sued. On January 18, 1973, the Corps denied the application.

Shortly thereafter Gables filed the instant case seeking to have the Corps issue the permit. The Government filed a motion to dismiss which was denied. A motion to intervene on behalf of the defendants was filed by the Tropical Audubon Society, Inc., the National Audubon Society, Inc. and the Florida Audubon Society. This Court denied the motion to intervene. The Government then filed a motion for summary judgment upon which I will now rule.

## SUMMARY JUDGMENT

The procedural aspect of the defendants' motion for summary judgment should be considered before reaching the substantive issues presented in such motion.

The Federal Rules of Civil Procedure provide that a judgment should be rendered if the pleadings and other papers filed show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), F.R.C. P. See National Screen Service v. Poster Exchange, 305 F.2d 647 (C.A. 5, 1962). Defendants have filed a motion for summary judgment and have attached to it the entire administrative record (in excess of 600 pages) upon which the Corps of Engineers based its decision to deny the plaintiff's permit along with two affidavits indicating that the Corps' decision was based on the record. Defendants take the position that there is no genuine issue as to any material fact other than those established in the pleadings and the attached papers. This Court has carefully reviewed the papers filed in the case and, in spite of the plaintiff's opposition, is persuaded that there is no genuine issue as to any material fact in the instant case. I now turn to the question of whether the defend-

ants are entitled to judgment as a matter of law.

## DECISION OF THE CORPS OF ENGINEERS

The Complaint, after describing various State court proceedings which involved the plaintiff, alleges that the defendants did not conduct an adversary hearing and "that there was no substantial evidence to support the judgment of the district engineer in denying plaintiff's application for an extension of its permit, and said judgment is arbitrary, capricious and without sufficient support in the record before the District Engineer." (Complaint, paragraph 12) These items will be discussed individually in determining whether or not defendants are entitled to summary judgment.

1. *Adversary Hearing.* Plaintiff takes the position that it is entitled to an adversary hearing prior to a determination by the Corps on its permit application if for no other reason than for the Corps to consider the issue of the "public interest" of the project. Defendants on the other hand argue that the plaintiff may have requested, and had the opportunity for, a public hearing but this opportunity was waived since no hearing was ever requested. The question this Court must decide is whether the plaintiff is entitled as a matter of right to a public hearing. In making this determination I look first to the statute which authorizes the defendants to issue permits for dredge and fill activities—Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403. This section makes it unlawful to, *inter alia,* excavate, fill or alter the course, condition or capacity of the channel of any navigable water "unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same." 33 U.S.C. § 403.[2]

2. Section 12 of the Act, 33 U.S.C. § 406, provides for criminal penalties up to $2500

for each violation and for the removal of any unlawful structures.

The statute then clearly provides the Secretary of the Army with the authority to issue permits to conduct dredge and fill operations but it nowhere provides that any type of hearing must be held prior to the issuance of such permits. In examining the issue of whether or not this Act requires a hearing, the Court in Sisselman v. Smith, 432 F.2d 750, 754 (C.A. 3, 1970), found:

> "The Rivers and Harbors Appropriation Act of 1899 . . . may be searched in vain for any language indicating the need for an adversary hearing before the authority contained therein may be exercised. . . ."

The Rivers and Harbors Act nowhere requires that a hearing be held prior to the issuance of a permit. Further, the issuance or denial of such is not contingent on adversary proceedings, although such proceedings are clearly not prohibited by the Act. In examining the regulations of the Corps of Engineers I find that the applicant is provided with an adequate opportunity to present any information or evidence upon which it wishes to support the application or to rebut objections to the application. *See* 33 C.F.R. § 202.120(f). In the instant case the plaintiff never requested the Corps to conduct a hearing. While the Corps was considering its application, plaintiff submitted a technical report rebutting certain of the adverse comments and reports submitted to the Corps. The plaintiff was free to request a hearing at that point or to present the Corps with any further information or reports that it felt appropriate. I find that since the plaintiff had its opportunity to request a hearing and elected not to do so, it may not challenge denial of the permit on the basis that it did not receive a hearing.

■ 2. *Scope of Review.* In order to determine whether or not the decision of the Corps of Engineers to deny the permit was proper, it is first necessary to establish the proper scope of judicial review. Plaintiff has sought to conduct extensive discovery procedures, presumably to determine whether the Corps properly denied the application. Defendants have opposed the discovery procedures on the basis that this action is a challenge, pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 et seq., to a final agency decision of the Corps and as such should be reviewed only on the administrative record. I find the position of the defendants to be proper.

■■ The plaintiff seeks to review a final administrative decision of the Corps of Engineers; the Complaint alleges jurisdiction under the Administrative Procedure Act. It is well established that the extent of judicial review of an administrative decision is determined by the statute upon which the decision is based. In the absence of statutory authorization, review of an administrative decision is based upon the administrative record of the particular agency. This was recently reaffirmed by the Supreme Court in Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973):

> "The appropriate standard for review was accordingly whether the comptroller's adjudication was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' as specified in 5 U.S.C. § 706(2)(A)."

> "In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."

> \* \* \* \* \* \*

> "The validity of the comptroller's action must, therefore, stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review."

The Supreme Court also dealt with this issue in Citizens to Preserve Overton

Park v. Volpe, 401 U.S. 402, 420, 91 S. Ct. 814, 825, 28 L.Ed.2d 136 (1971):

"Thus it is necessary to remand this case to the District Court for plenary review of the Secretary's decision. That review is to be based on the full administrative record that was before the Secretary at the time he made his decision."

Judicial review, then, must be confined[3] to the contents of the administrative record. Information extraneous to the record should not be considered in the review procedure. If the agency action is found to be improper, the matter would be remanded to the agency; it would be improper to conduct *de novo* proceedings in the form of a trial by the district court to consider extra-record information.

■ I find that the scope of review in the instant case is limited to the administrative record upon which the Corps of Engineers made its decision.

3. *Arbitrary, Capricious, and Abuse of Discretion Or Not in Accordance with Law.*

Plaintiff urges that the denial of its permit by the Corps was arbitrary and capricious and further alleges that the District Engineer found that the project would cause no harmful effect to the navigable waters of Biscayne Bay. (Complaint, paragraph 13) Defendants on the other hand deny such allegations and assert that the decision of the Corps was proper and that the administrative record supports this position. The record contains over 500 adverse comments on the project including those from the United States Environmental Protection Agency, the Department of Interior, the Metropolitan Dade County Planning Department, the Florida Audubon Society and the National Audubon Society as well as reports from the De-partment of Interior, Bureau of Sport Fisheries and Wildlife and the Florida Game and Fresh Water Fish Commission. Hundreds of interested citizens, including at least one United States Senator and two Congressmen, submitted comments opposing the project. Less than five comments were received in favor of the project. Also included in the record is a twenty-six page technical report submitted by the plaintiff which discusses and rebuts certain of the adverse comments. The Department of Interior, Bureau of Sport Fisheries and Wildlife, in its report to the Corps, stated:

"The project, as proposed, will result in a significant destruction in degradation of the marine resources of South Biscayne Bay. Approximately 128 acres of red mangroves and 50 acres of open shallow water will be lost as the result of the proposed filling. In addition, 240 acres of bay bottom will be altered or disturbed as the result of the proposed dredging operation. Areas previously dredged in accordance with the original permit are over 10 feet deep, receive little or no light penetration, contain large deposits of silt, and have not revegetated. It is obvious that revegetation cannot be anticipated in the proposed dredge area."

The Florida Fresh Water and Fish Commission stated in its report to the Corps:

"The proposed project's finger fill system will contribute to increased urban runoff which in conjunction with the excessively deep canals will contribute to eutrophication of adjacent waters. . . ."

"This project will completely obliterate or degrade more than three hundred and fifty acres of biologically productive submerged land and title

---

3. The Court may also consider the inherent expertise of the agency making the decision.

City of Chicago v. F. P. C., 147 U.S.App.D.C. 312, 458 F.2d 731, 746 (1971).

swamp, thus eliminating a significant portion of the Biscayne Bay ecosystem, its food webs and wildlife habitat. . . . "

The Department of Interior, Office of the Secretary stated in its letter to the Corps:

". . . The dredging proposed would permanently disrupt these [complex and valuable biological] communities in both the area to be filled and the area dredged to obtain the fill material. Perhaps of greater importance would be the damage caused by siltation and turbidity resulting from the dredging operation. . . . "

■■■■ In order to upset the final agency decision, there must be a clear showing that such decision was improper. The burden of proving that the action was improper is on the party challenging the decision. It is well settled that there is a definite presumption of regularity in favor of the administrative decision. FCC v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965); Chaney v. United States, 406 F.2d 809 (C.A. 5, 1969), cert. den. 396 U.S. 867, 90 S.Ct. 128, 24 L.Ed.2d 120. In reviewing this action this Court may determine only whether the agency acted properly and it must not "substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). After reviewing the administrative record, which I find adequate for the purposes of judicial review, this Court is of the opinion and finds that the Corps' decision was proper, was not arbitrary, capricious, was not an abuse of discretion and in accordance with law. I find that the decision was based on a consideration of the relevant factors; that there was no "clear error of judgment", Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402,

416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); and that the Corps' action in denying the permit was a "reasoned decision", International Harvester v. Ruckelshaus, 478 F.2d 615, 648 (C.A.D.C. 1973). See also Essex Chemical Corporation et al. v. Ruckelshaus, C.A.D.C., 486 F.2d 427, decided September 10, 1973.

■■■ 4. *Sufficiency of Fact Finding.* Plaintiff contends that the decision of the Corps is not supported by the record. This is, in effect, an attack on the sufficiency of the fact finding procedures of the administrative agency. However, nowhere does the plaintiff clearly establish any defect in the procedures or the establishment of the administrative record.[4] The procedures of the Corps of giving public notice of the permit application, accepting written comments, providing the applicant with copies of comments and by allowing the applicant to rebut comments, are not on their face inadequate procedures in the administrative process. In the instant case these procedures, as evidenced by the record, were properly and adequately carried out by the Corps.

■■■ Plaintiff also contends that there "was no substantial evidence" to support the decision of the Corps of Engineers. This argument is not relevant to the Corps' fact finding procedures since the substantial evidence test need only be utilized in an adjudicatory or formal rule making procedure. It is not involved in the type of decision making process involved in the instant case. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 414, 417, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L. Ed.2d 106 (1973); Delaware Citizens for Clear Air, Inc. v. Ruckelshaus, 480 F.2d 972 (C.A. 3, 1973).

I find the Corps' fact finding procedures to be adequate, based upon sub-

---

4. Plaintiff does assert that no adversary hearing was conducted, but it never asserts that this resulted in faulty fact finding by the Corps.

stantial evidence, and that they were adequately carried out in the instant situation.

## CONCLUSION

Having considered the pleadings and papers, including the administrative record, in this matter, I find that there are no genuine issues of material fact and that the defendants are entitled to summary judgment as a matter of law. The administrative determination of the Corps of Engineers in denying the plaintiff's application for a permit pursuant to 33 U.S.C. § 403 is upheld and the relief sought by the plaintiff is denied.