567 F.2d 1332
 11 ERC 1219, 8 Envtl. L. Rep. 20,194
 Henry H. TAYLOR, Jr., as Trustee, owner of a 34-acre parcel,
and Arthur B. Lujan, and Betty L. Lujan, as owners
of adjacent 11 and 4-acre parcels,
Plaintiffs-Appellants,
v.
DISTRICT ENGINEER, U. S. ARMY CORPS OF ENGINEERS,
JACKSONVILLE, FLORIDA, an agency of the United
States of America, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur B. LUJAN et al., Defendants-Appellants.
 No. 76-1922.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 17, 1978.
 
 R. Bruce Wallace, Jr., Robert J. Paterno, Miami, Fla., for plaintiffs-appellants.
 Jack V. Eskenazi, U. S. Atty., Miami, Fla., Peter R. Taft, Asst. Atty. Gen., Carl Strass, Atty., Maryann Walsh, Atty., Dept. of Justice, Washington, D. C., for defendant-appellee.
 Appeals from the United States District Court for the Southern District of Florida.
 Before GOLDBERG, AINSWORTH and FAY, Circuit Judges.
 FAY, Circuit Judge:
 
 
 1
 The appeal before us today centers around the appellants' heretofore unsuccessful challenge to an administrative determination of the United States Army Corps of Engineers. Most of the issues raised by the appellants are without merit and will not be discussed. The appellants do, however, point out two irregularities in the processing and determination of their permit application, and, because of these irregularities, reversal of the district court order is mandated.
 
 I. FACTS
 
 2
 The procedural and factual history of this case is long and complicated, but it need not be related in detail in order to understand properly the points to be discussed in this opinion. In 1970, the appellants, Arthur B. Lujan, Betty L. Lujan, and Henry H. Taylor, bought a thirty-four acre parcel of land which included Enchanted Island and its surrounding submerged lands. Enchanted Island is a three acre mangrove island in Florida Bay to the east of Key Haven and north of U.S. Highway 1. In late December 1972, Arthur Lujan began the process of either originally building an access road to the western tip of the island from U.S. Highway 1 (as the government contends), or repairing a previously constructed access road (as Lujan argues). Since this work was being performed without a federal permit, the Department of the Army on January 4, 1973, advised Lujan that he should cease and desist all unauthorized work in navigable waters or else subject himself to potential civil and criminal liability.[1] Lujan stopped all further operations, but filed suit to enjoin any further interference with the use and enjoyment of Enchanted Island. A hearing was held on Lujan's motion for temporary injunction, but no ruling was made since Lujan agreed to submit an after-the-fact permit application to the Corps of Engineers.
 
 
 3
 On May 30, 1973, Lujan submitted a permit application with a supporting environmental impact study. The application sought the "restoration of pre-existing land and construction of three (3) culverts." The application also sought approval for the removal of an eastern access road.
 
 
 4
 In accordance with the regulations of the Corps of Engineers, public notice of the application was issued on September 7, 1973.[2] As a result of public requests and responses to the public notice, a public hearing was scheduled. At that hearing, on December 5, 1973, the applicant, through his counsel, made a statement and offered exhibits. Subsequently, on June 17, 1974, the Corps of Engineers denied Lujan's permit. The Corps offered the following five reasons for denial:
 
 
 5
 1. Would be contrary to Section 301 of the Federal Water Pollution Control Act of 1972 in that you have not obtained certification from the State of Florida Department of Pollution Control;
 
 
 6
 2. Would be contrary to the Corps' policy of not issuing a Department of the Army permit when a state permit is required but has not been issued;
 
 
 7
 3. Would remove a biologically productive area from the marine ecosystem;
 
 
 8
 4. Is opposed by the Bureau of Sport Fisheries and Wildlife of the Department of Interior, the National Marine Fisheries Service of the Department of Commerce, and the Environmental Protection Agency; and
 
 
 9
 5. Is not believed to be consistent with the current public interest in protection of the natural environment as enunciated in the National Environmental Policy Act of 1969.
 
 
 10
 App. at 335.
 
 
 11
 In February, 1975, appellants again filed suit against the Corps in the United States District Court for the Southern District of Florida seeking injunctive and declaratory relief and de novo review of the Corps' permit denial.[3] The United States responded to this suit by instituting an action against the appellants for violation of the permit requirements of Section 10 of the Rivers and Harbor Act of 1899, 33 U.S.C. § 403, and the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1341 et seq. In their action, the government sought civil penalties, and an order that the unauthorized work be removed and the area restored to its pre-existing condition. These two actions were ultimately consolidated.
 
 
 12
 On the government's motion, the district court entered a partial summary judgment on September 29, 1975. The matter then proceeded to trial on the issues of the construction of the access road, liability under the Federal Water Pollution Control Act, and the Corps' denial of Lujan's after-the-fact permit.
 
 
 13
 On December 5, 1975, the district court ruled that the Corps' permit denial was neither arbitrary nor capricious. The court further ordered Lujan to remove the western access road and restore the area to the natural depth of the adjacent bottom, and to pay a $10,000.00 civil penalty for violation of the Federal Water Pollution Control Act. This appeal followed.
 
 II. ARGUMENT
 
 14
 The appellant's primary attack on appeal is focused on the procedures employed by the Corps of Engineers in determining their after-the-fact permit application. The "bottom line" of their argument is that the denial of their application was wrong for one of two reasons. First, the appellants attempt to argue that the Administrative Procedure Act, 5 U.S.C. § 551 et seq., requires that the determination of this license or permit should be made in accordance with all the procedural protections accorded in § 556 of the APA.[4] This being the case, the appellants assert that the standard of review to be employed by the district court should be the "substantial evidence" test set forth in § 706(2)(E) of the APA rather than the "arbitrary, capricious, an abuse of discretion" test outlined in § 706(2)(A).[5] The second point the appellants raise is that regardless of the requirements of the APA, the Due Process Clause of the Fifth Amendment was violated by the actions and procedures of the Corps of Engineers.
 
 A. The APA Argument
 
 15
 The appellants have two theories on why § 556 and the § 706(2)(E) substantial evidence test apply. One of these approaches is more unique than the other both of these approaches are wrong.
 
 
 16
 The first of the appellants' theories is one that has been traditionally advanced by litigants dealing with the Corps of Engineers, and also happens to be a theory which has been repeatedly rejected by this court. The determination of whether a reviewing court applies the substantial evidence test, and whether an applicant is entitled to a § 556 hearing are closely interrelated. Section 706(2)(E) provides that a reviewing court shall hold unlawful and set aside agency actions, findings and conclusions found to be:
 
 
 17
 unsupported by substantial evidence in a case subject to section 556 and 557 of this title. . . . (emphasis added)
 
 
 18
 Section 557 need not be discussed because it applies only if a hearing is required under § 556.[6] Thus, for the substantial evidence test to apply, we need only determine if § 556 is applicable.
 
 
 19
 Section 556 deals with the conduct of agency hearings. It sets forth in particular who shall preside at hearings, their powers and duties, who has the burden of proof, and the types of evidence which may or may not be received. However, subsection (a) of § 556 explains that these procedural requirements come into play only for "hearings required by section 553 or 554 of this title to be conducted in accordance with this section." Our inquiry, therefore, must now turn to whether either § 553 or § 554 requires a § 556 hearing in our type of controversy. Section 553 deals with rulemaking, and is, therefore, inapplicable. Section 554 is entitled "Adjudications." "Adjudication" is defined in § 551(7) as the "agency process for the formulation of an order." Subsection (6) of § 551 defines "order" as the:
 
 
 20
 whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing. (emphasis added)
 
 
 21
 Subsection (9) defines "licensing" to include the agency process respecting the "grant . . . denial . . . or conditioning of a license." Finally, subsection (8) defines "license" to mean "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption, or other form of permission."
 
 
 22
 In a manner that is no doubt less than lucid, we have attempted to show that the process of determining whether or not an applicant is entitled to a permit from the Corps of Engineers is considered "adjudication" under the APA. Section 554, entitled "Adjudications", provides for hearings to be conducted in accordance with § 556,[7] and the appellants contend that since a permit application is "adjudication," they were entitled to a § 556 hearing. Section 554, however, does not affect all adjudications, but rather this section comes into play only in cases of adjudication which are required by statute to be determined on the record after an opportunity for an agency hearing. Thus, to determine whether a § 556 hearing is required, we must examine the relevant statute to see if it requires the permit application "to be determined on the record after an opportunity for an agency hearing."
 
 
 23
 Section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403 provides:
 
 
 24
 The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.
 
 
 25
 Nowhere in § 403 is any mention made of a hearing, much less of a requirement that the Corps of Engineers make their determination "on the record after an opportunity for a hearing." Without this, § 554 of the APA does not apply, and, consequently, a § 556 hearing is not required. As previously explained, without the § 556 hearing, the scope of review of a Corps of Engineers determination is not the substantial evidence test of § 706(2)(E), but is rather the arbitrary, capricious, or abuse of discretion standard set forth in § 706(2)(A).
 
 
 26
 This is not the first time that this court has determined that the Corps of Engineers is not required to hold a § 556 hearing, or that the substantial evidence test is not the proper standard on review. Several times before this court has stated that the Corps need not hold formal hearings, and that its decisions are to be reviewed only to determine if they are arbitrary, capricious or an abuse of discretion. See Joseph G. Moretti, Inc. v. Hoffman, 526 F.2d 1311 (5th Cir. 1976); DiVosta Rentals, Inc. v. Lee, 488 F.2d 674 (5th Cir. 1973); Gables By The Sea, Inc. v. Lee, 365 F.Supp. 826 (S.D.Fla.1973), aff'd, 498 F.2d 1340 (5th Cir. 1974), cert. denied 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801. At oral argument of this case, the appellants recognized the holdings of these cases, but asked us, in effect, to reconsider them. This is something a panel of this court obviously can not do. In fact, we have walked this case through the labyrinth of the APA primarily because it had not been done in the other opinions, and also to provide a proper background to discuss the appellant's second theory on why the § 706(2)(E) substantial evidence test applies.
 
 
 27
 The appellants second proposed route to § 706(2)(E) is via § 558(c) of the APA. This section deals with determinations for applications for licenses and provides in part:
 
 
 28
 When application is made for a license required by law, the agency, with due regard for the rights and privileges of all the interested parties or adversely affected persons and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this title or other proceedings required by law and shall make its decision. (emphasis added).
 
 
 29
 The appellants contend that independent of § 554, a § 556 hearing is required simply because this is a license proceeding. The appellants argue in support of this contention that the language of § 558(c) means that when an application is made for a license, the agency must hold proceedings which shall be "conducted in accordance with sections 556 and 557 . . .." The appellants cite to us a recent opinion of the Seventh Circuit which adopts this position. In United States Steel Corp. v. Train, 556 F.2d 822 (7th Cir. 1977), the Seventh Circuit stated:
 
 
 30
 Sections 556 and 557 are applicable for another reason: § 558(c) of the APA provides, independently of § 554 of the Act, that "(w)hen application is made for a license required by law" the agency shall hold proceedings which shall be "conducted in accordance with sections 556 and 557." Because this is a license application proceeding, §§ 556 and 557 apply whether or not § 554 does. In addition, § 706(2)(E) of the APA makes the case subject to the "substantial evidence" standard of judicial review.
 
 
 31
 Id. at 833, 834.
 
 
 32
 We do not accept the appellants' and the Seventh Circuit's interpretation of § 558. It seems to us that their error stems from not considering all the relevant language in that section. The Train opinion quotes § 558 as saying that when an application is made for a license, the agency "shall set and complete proceedings required to be conducted in accordance with sections 556 and 557." This, however, is not a complete quotation of the relevant parts of § 558. A complete quote includes, "the agency . . . shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 or other proceedings required by law and shall make its decision." (emphasis added). We read § 558 to mean that when an application for a license has been made, the agency shall conduct those proceedings which are required by § 556 (assuming § 556 otherwise applies), and if § 556 does not apply, then the agency shall set and complete whatever other proceedings are required by law or the Constitution. Thus, we do not read § 558 as requiring a § 556 hearing and, without the § 556 hearing, the substantial evidence test of § 706 does not come into play. Our determination under the APA of the propriety of the agency's decision is, therefore, limited to whether or not it was arbitrary, capricious or an abuse of discretion. 5 U.S.C.A. § 706(2)(A)
 
 III. THE DUE PROCESS ARGUMENT
 
 33
 The appellants' second attack on the Corps administrative determination is based upon the Due Process Clause of the Fifth Amendment. The main thrust of this attack is that regardless of the requirements of the APA, the Due Process Clause requires a more formal hearing to be held in the determination of a permit application than the type of hearing which is provided for in the regulations of Army Corps of Engineers. The appellants set forth this argument as follows:
 
 
 34
 Denial of a permit to maintain and restore pre-existing access road upon one's own land constitutes a taking, withholding and deprivation of property within the meaning of the Fifth Amendment, and such a deprivation of property without a prior evidentiary hearing, with the right of confrontation testimony under oath and cross examination constitutes denial of due process within the meaning of the Fifth Amendment.
 
 
 35
 Brief for Appellants at 23. We do not agree with the appellants, and feel that the procedures set forth in the regulations of the Corps[8] easily satisfy the requirements of due process. These regulations specify that once an application for a permit is filed with the Corps of Engineers, a public notice of the application must be given in order to allow for public responses and to obtain consultation from interested parties. 33 C.F.R. § 209.120(f) (1972). If any substantive objections are received, the regulations provide that the applicant is to receive "full and complete information to give him an opportunity to comment thereon," 33 C.F.R. § 209.120(f)(9) (1972), and if sufficient public interest is shown in the project, then the District Engineer of the Corps is authorized to conduct a public, informal hearing at which both proponents and opponents of the project are allowed to be heard. 33 C.F.R. § 209.120(g)(4) (1972).[9] The regulations also detail as thoroughly as practical the standards the Corps must apply in assessing applications. 33 C.F.R. § 209.120(d)(1) (1972) provides:
 
 
 36
 The decision as to whether a permit will be issued must rest on an evaluation of all relevant factors, including the effect of the proposed work on navigation, fish and wildlife conservation, pollution, aesthetics, ecology, and the general public interest . . .. In cases where the structure is unobjectionable but when State or local authorities decline to give their consent to the work, it is not usual for the Corps of Engineers to issue a permit . . ..
 
 
 37
 This Court has previously condoned the procedural protections provided for in these regulations, and has implied that these regulations satisfy Fifth Amendment due process. Gables By The Sea, Inc. v. Lee, 365 F.Supp. 826 (S.D.Fla.1973); aff'd, 498 F.2d 1340 (5th Cir. 1974), cert. denied, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed. 801. Nothing the appellants have brought before this Court leads us to conclude differently, and we feel that these regulations, if properly adhered to by the Corps, adequately meet the requirements of due process.
 
 
 38
 The appellants' next point goes to the Corps adherence to their own regulations and promises. The appellants contend that their due process rights were violated because the Corps failed to disclose to them all claims opposing their permit, and that the Corps failed to follow a stipulation they had entered into with the appellants. We agree with the appellants, and feel that these irregularities were material to the determination process and inexcusable on the part of the Corps.
 
 
 39
 Of the five reasons given by the Corps for denial of the permit application, one was based on the opposition of the Bureau of Sport Fisheries and Wildlife of the Department of Interior. The appellants claim, and the record reflects, that they were in fact not provided with all the comments of the Department of Interior even though they had specifically requested as late as January 31, 1974 copies of all adverse comments. The appellants are referring specifically to a letter of April 26, 1973, from the Department of the Interior in opposition to the permit. What is really surprising is that the Corps, in a letter dated February 19, 1974, wrote the appellants and stated that all adverse comments had been forwarded to them. App. 318. They wrote this letter even though one week earlier, in a letter from their district office to their Washington headquarters, the Corps set forth that they had not given appellants this Department of Interior letter. App. 331.
 
 
 40
 The regulations of the Corps of Engineers provide that:In all instances when substantive objections are received in response to a public notice, the District Engineer will inform the applicant of the objections giving full and complete information to give him an opportunity to comment thereon.
 
 
 41
 33 C.F.R. § 209.120(f)(9). Also, this Court has previously stated that so long as a regulation remains in force, the Department of the Army is required to respect it. United States v. Joseph G. Moretti, Inc., 478 F.2d 418, 425 (5th Cir. 1973). Thus, the failure of the Corps to provide this information to the appellants was wrong, and it was also material because the position taken by the Department of the Interior was one of the reasons for the denial of the permit application. The Corps attempts to argue a number of reasons justifying their failure to turn over this information including that the appellant, through other sources, had already received all the information contained in the letter. We are not impressed by these arguments, and we do not feel that it should be the Corps, rather than the applicants themselves, who determine the relative importance of adverse comments to their application. As a result, in the ultimate processing of this application after remand of this case, the Corps is directed to adhere to their own regulations, and to give to the applicants all adverse comments which will be considered in processing the application.[10]
 
 
 42
 The appellants second complaint about the Corps' internal handling of this application, is that the Corps supposedly breached an agreement that was entered into between the Assistant United States Attorney and the appellant regarding the processing of their after-the-fact application. Specifically, the appellants argue that before they had agreed to voluntarily dismiss their first law suit, and to file an after-the-fact permit application instead, they had received a stipulation from the Assistant United States Attorney promising that the Corps would only consider in their determination substantive objections from the state agencies who had to be notified. The reasons for the appellants seeking and requiring this stipulation is that the state agencies had evidently adopted a policy not to support or approve any after-the-fact permit applications.[11] Thus, absent this stipulation not to consider anything but substantive state objections, the filing of the after-the-fact permit application with the Corps would have been meaningless.
 
 
 43
 In the Corps' lists of reasons for denying the appellants' application, two of the five reasons deal with the failure of the appellants to receive a state permit or certification. The objections received from the State of Florida, however, were in no way substantive in nature. Rather, the State of Florida opposed the permit simply because the appellants had not filed for a state authorization (even though this was impossible to receive.)[12]
 
 
 44
 Certainly, if the appellants are correct in their assertions about the stipulation they have every right to complain about the use by the Corps of these non-substantive objections. The Corps, however, denies the appellants' characterization of the stipulation, and contend that they stipulated only to begin the processing of the permit application without the prior state approval. The position of the Corps is that they at no time agreed to allow the appellants to forego ever making application for state approval.
 
 
 45
 A review of the relevant portions of the record lends support to the appellants as opposed to Corps recollection of the stipulation. Since the stipulation was oral, there is nothing in the record which totally reflects its content. There is, however, a letter from the Assistant United States Attorney who entered into the stipulation with the Corps from which the contents of the stipulation can be inferred. In this letter, the government attorney stated:
 
 
 46
 After the permit is complete it is my understanding that appropriate Federal and State agencies are given a "reasonable time" to present objections. In view of the litigation in this matter, a reasonable time should be 15 days, and objections should be specific. The standard comment of the State that issuance of the Federal permit is opposed until the State issues its permit is vague and unacceptable under the present circumstances.
 
 
 47
 It is requested that the Federal and State agencies be advised that because of the litigation in this matter unless specific objections are received within 15 days it will be assumed that there is no objection to the issuance of the after-the-fact permit by the Corps of Engineers.
 
 
 48
 App. 273, 274. This letter, and the fact that all parties knew that an after-the-fact state permit could not be obtained, indicate that the appellants were lead to believe that only substantive objections from state agencies would be considered. It was, therefore, totally inappropriate and inexcusable for the Corps to consider any other type of objection, and it is exactly this type of treatment by the Corps that causes total frustration in many of the people that are forced to deal with them. The decisions of the Corps more often than not substantially affect the property rights and values of many people. In our attempt to provide for the smooth operation of their application procedures, this Court has given to the Corps decision-making powers which almost go totally unchecked. This was done under the impression that the Corps would not abuse this freedom. The performance of the Corps in this particular application process reflects the type of abuse which was certainly not envisioned in the formulation stage of the role this Court would play with the Corps of Engineers. Certainly, if this type of performance was to become of a routine nature, then it might well be time to reconsider en banc some of our earlier decisions.
 
 
 49
 The decision of the district court is reversed. On remand, the Corps is instructed to provide the appellants with all comments adverse to their application, and not to consider any previously filed objections from the State since they were not specific in nature.
 
 
 50
 Reversed and remanded.
 
 
 
 [1]
 Liability would be based on 33 U.S.C. §§ 403 and 406. Section 403 provides:
 The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.
 The penalties for violation of § 403 is provided for in § 406:
 Every person and every corporation that shall violate any of the provisions of sections 401, 403, and 404 of this title or any rule or regulation made by the Secretary of the Army in pursuance of the provisions of section 404 of this title shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court. And further, the removal of any structures or parts of structures erected in violation of the provisions of the said sections may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States.
 
 
 [2]
 The pertinent regulation is 33 C.F.R. § 209.120(f) (1972)
 
 
 [3]
 The first suit filed by the appellants had been dismissed without prejudice by the district court in December 1973, because it was not ready for adjudication until final agency action by the Corps
 
 
 [4]
 5 U.S.C. § 556 provides in part:
 (a) This section applies, according to the provisions thereof, to hearings required by section 553 or 554 of this title to be conducted in accordance with this section.
 
 
 [5]
 The complete text of 5 U.S.C. § 706 provides:
 To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall
 (1) compel agency action unlawfully withheld or unreasonably delayed; and
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 (B) contrary to constitutional right, power, privilege, or immunity;
 (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
 (D) without observance of procedure required by law;
 (E) unsupported by substantial evidence in a case subject to section 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
 (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
 In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.
 
 
 [6]
 § 557 provides in part:
 This section applies, according to the provisions thereof, when a hearing is required to be conducted in accordance with section 556 of this title.
 
 
 [7]
 § 554(c)(2) provides that an agency shall give all interested parties a § 556 hearing when the parties are unable to determine a controversy by consent
 
 
 [8]
 We are concerned only with those regulations effective during the consideration of this permit application. 33 C.F.R. § 209.120 (1972)
 
 
 [9]
 This informal type of hearing was held in this case
 
 
 [10]
 However, we are not referring to intra-office communiques, and, in particular, we are not referring to the "in house" report of January 21, 1974
 
 
 [11]
 This point was brought out in the deposition of a Mr. Goode of the Corps of Engineers. (App. 347)
 
 
 [12]
 The response of the State of Florida Board of Trustees of the Internal Improvement Trust Fund was:
 A review of our files indicates that we have not received an application for the proposed restoration. Accordingly, we are requesting that your office withhold issuance of any and all permits relevant to this project.
 Apx. 291. The response of the Department of Natural Resources of the State of Florida indicated a lack of understanding as to just what the appellants were seeking to do. Evidently the Department of Natural Resources thought the application was for a permit to fill all of Enchanted Island which the Department opposed since it was a mangrove island of the type the Department was committed to preserve.