The **DELTONA CORPORATION, a Delaware Corporation, authorized to do business in the State of Florida, Plaintiff,**

v.

**Clifford L. ALEXANDER, Jr., Secretary of the Army; Donald A. Wisdom, Colonel, District Engineer, United States Army Corps of Engineers, Department of the Army, Jacksonville, Florida District, Defendants,**

**Environmental Defense Fund, Inc. et al., Defendant-Intervenors.**

**No. 76–473–Civ–J–WC.**

United States District Court, M. D. Florida, Jacksonville Division.

Jan. 14, 1981.

William L. Earl, Miami, Fla., for plaintiff.

Fred R. Disheroon, Dept. of Justice, Washington, D. C., for defendants.

James T. B. Tripp, Environmental Defense Fund, Inc., New York City, for intervenors.

## ORDER AND OPINION

CASTAGNA, District Judge.

The Court has for adjudication the Motion of Plaintiff, Deltona Corporation, to Transfer or Stay these proceedings, the Motion of Defendants Alexander, Chief of the Army Corps of Engineers, et al., for Summary Judgment, and the Motion of Defendant Intervenors, The Environmental Defense Fund, et al., for Summary Judgment. The Court heard argument on these motions on December 2, 1980.

Plaintiff, Deltona Corporation, brought this suit challenging an administrative action of the United States Army Corps of Engineers. In 1973, pursuant to 33 U.S.C. § 403; 33 U.S.C. § 1344, Deltona applied to the Corps for three permits to dredge and fill wetlands on Marco Island, Florida. The Chief Engineer, acting for the Corps, denied two permits and granted one. Deltona contends that the Army Corps of Engineers denial of the permits was arbitrary and capricious, that the Corps denied Deltona due process of law; that the Corps wrongly disregarded a State of Florida decision; that the Corps should be estopped to deny the permits; that the denial of the permits constitutes a taking without just compensation and that the Army Corps does not have jurisdiction over Deltona's land.

### Factual Background

The present controversy centers around Marco Island, Florida, located approximately twenty miles south of Naples. In 1964, Deltona purchased approximately 10,300 acres in this area and prepared a master plan for an entire community. Deltona planned to dredge and fill in order to create "finger canals" and to raise the elevation of some of the property. In order to carry out this plan, Deltona was required to obtain both state approval and United States Army Corps of Engineers' permits. Deltona divided Marco Island into five construction or permit areas. These five areas, in order of scheduled completion, are Marco River, Roberts Bay, Collier Bay, Barfield Bay and Big Key. Deltona was selling lots to buyers in all five areas by 1965.

In 1964, Deltona obtained county, state and federal dredge and fill permits for Marco River. At this time, the Corps was primarily concerned with the effects of dredging and filling on navigation and the permits were issued routinely. In 1967, Deltona applied for the permits to dredge and fill Roberts Bay. While the county and state issued the necessary Roberts Bay permits in 1968, Deltona experienced difficulty in obtaining the Army Corps of Engineers permit because of the objection of The United States Fish and Wildlife Service, Department of Interior. A series of negotiations ensued which resulted in the permit being issued with a set of conditions. Two conditions are pertinent to the issues involved in the present litigation. Condition bb specified that the issuance of the Roberts Bay permit did not necessarily mean that any future permit applications would similarly be granted. Condition cc allowed Deltona to continue selling in the platted areas but forbid Deltona to offer for sale any land for which the State of Florida had not previously established bulkhead lines. (Permit File, Volume IV, 23 B.4 f(4)).

The third portion of Marco Island to be developed was Collier Bay, Barfield Bay and Big Key. Deltona applied to Florida for the necessary permits which the State ultimately granted predicated on Deltona's transfer to the State of four thousand acres for conservation. The federal officials were aware of this negotiation.

The Florida Department of Pollution Control certified to the Corps that the issuance of the dredge and fill permits would not result in violation of the applicable water quality standards. The only obstacle to the development was the issuance of the necessary Corps dredge and fill permits, which Deltona applied for in 1973. It is these permits that are the subject matter of this litigation.

The Corps followed the statutory procedures for reviewing the permit application, *see* 33 U.S.C. § 1344; 33 U.S.C. § 1151,

including public notices, public hearings, preparation of the Environmental Impact Statement, and an opportunity for Deltona to respond to all comments during this period. Deltona does not contend that there was anything irregular about this process.

The Corps then began its evaluation of the application for the permits pursuant to 33 C.F.R. § 209.120(p) (1975). The District Engineer, after the required public input, makes the initial determination. In most cases, this is the final determination, but if there are objections to the proposed activity that are not resolved to the satisfaction of the District Engineer, the application will be reviewed by the Division Engineer. The Division Engineer must refer the case to the Chief of Engineers in several instances, including those where there are unresolved objections from another federal agency. In the event these objections cannot be resolved at the Chief's level, the case is referred to the Secretary of the Army in accordance with a Memorandum of Understanding with the Department of Interior.

In regards to Deltona's application for permits to dredge and fill at Marco Island in the three remaining sections, the District Engineer found that although the proposed project would have no appreciable effect on navigation, it would destroy 2152 acres of mangrove wetland and 735 acres of bay bottom and was therefore contrary to applicable policies of wetland conservation. The District Engineer determined that the fish and wildlife losses would far exceed the benefits of the proposed replacement system and that water quality was not a major factor. The District Engineer ultimately concluded that the damages outweighed the benefits in respect to Big Key and Barfield Bay, but that the Collier Bay permit should be granted because extensive work had already been accomplished and the little wildlife that could be saved would not exceed the benefits obtained if the site was fully developed.

The Division Engineer, South Atlantic Division, recommended that all three permits be granted because a denial of the permits would impose a great hardship on Deltona.

The Chief of the Army Corps of Engineers agreed with the District Engineer's assessment that the Collier Bay permit should be granted and the other two permits denied. In making his determination, the Chief considered both the Corps guidelines, 33 C.F.R. § 209 (1975), and the Environmental Protection Agency guidelines, 40 C.F.R. § 230 (1975). Essentially, these guidelines provide that the wetlands are a valuable resource and their destruction should be discouraged unless in the public interest. Under the Corps' regulations, to determine whether the public interest requires the issuance of dredge and fill permits, the Chief must consider whether the benefits of the proposed alteration outweigh the damage to the wetlands and whether the proposed alteration is essential to achieve those benefits. 33 C.F.R. § 209.-120(f)(3)(iv) (1975). In the case of Barfield Bay and Big Key, the Chief concluded that the basic purpose of the project, i. e. housing, did not outweigh the destruction of the wetlands and that the destruction of the wetlands was not essential to achieve the purpose of housing.

Deltona filed this suit in 1976 to challenge the Corps denial of the Barfield and Big Key permits. That same year Deltona filed an action in the Court of Claims alleging inverse condemnation, *Deltona v. United States*; (Case No. 370–76 Ct.Cl.). Deltona is also the defendant in a suit brought by vendees of the undeveloped property, *DeMaggio v. Deltona*, Case No. 79–4665–CIV–JLK (S.D.Fla.).

### Transfer or Stay Motion

Deltona has requested that this cause be transferred to the Southern District of Florida because of the pendency of *DeMaggio* and has filed a third party complaint in *DeMaggio* against the Corps. The Corps has pending a Motion to Dismiss based on The Tucker Act, 28 U.S.C. § 1346.

■ This Court has already heard oral argument on the issues in this case and concludes that consolidation with *DeMaggio* would complicate the issues and that transfer would defeat rather than promote judicial economy.

1284

■ Deltona alternatively requests this Court stay these proceedings pending the final disposition of *Deltona v. United States*, Case No. 370–76 in the Court of Claims. The Court of Claims action is a suit for money damages based upon an inverse condemnation theory. This Court will not consider the taking of property issue because it is properly within the Court of Claims' exclusive jurisdiction under the Tucker Act. The review of the Corps' decision, however, is properly before this Court. A stay of these proceedings would delay justice rather than promote its efficient administration.

The Motion for Transfer or in the Alternative for a Stay will accordingly be denied.

## The Summary Judgment Motions

The Corps and the Defendant Intervenors have moved for Summary Judgment pursuant to Federal Rules of Civil Procedure, Rule 56. Under the Rule, Summary Judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

■ Deltona is seeking judicial review of an administrative agency decision. The Court's scope of review is delimited by the Administrative Procedure Act, 5 U.S.C. § 706 and may only set aside an agency decision if it finds the decision "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1)(A). The Court is not empowered to substitute its own judgment for that of the agency and must give deference to the technical expertise of the agency. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Ethyl Corp. v. E.P.A.*, 541 F.2d 1 (D.C.Cir. 1976).

In accordance with the law that the Court must review "the whole record or those parts of it cited by a party," 5 U.S.C. § 706, the Court has closely examined the numerous volumes which comprise the administrative record. However, Deltona contends that the administrative record is, in this case, incomplete because two items were improperly omitted.

■ Deltona first contends that the "Goode memorandum" was improperly omitted from the administrative record. That memorandum was an opinion by a staff member of the District Engineers who made the final decision. It is not properly part of the administrative record and it was therefore not error to omit it. Deltona secondly contends that an Environmental Protection agency report entitled "An Evaluation of Physical, Chemical and Biological Aspects of Canals and Associated Waterways at Marco Island, Florida" was improperly omitted from the record. This document was never submitted to the Corps, is not properly part of the administrative record and there was no error in its omission.

The Court finds that the administrative record is complete. Nevertheless the Court has inspected the documents sought to be included and finds that these documents, even if included in the record, would not change the Court's findings.

Deltona contends that the Corps considered irrelevant factors or gave other factors improper weight. This contention is unsupported. In reviewing the decision of the Corps it is clear that the Corps considered and balanced a plethora of factors. In arriving at the ultimate decision by the Chief Engineers, it cannot be said the Corps acted in an arbitrary or capricious manner. From the administrative record, the Court finds that the Corps acted in a careful, reasoned and lawful manner.

■ Deltona further contends that the Corps failed to comply with its own regulations which allow the applicant the opportunity to rebut all adverse agency comments and thus Deltona was denied procedural due process. The Corps regulation provided:

> The District Engineer shall consider all comments received in response to the public notice in his subsequent actions on the permit application. Receipt of comments will be acknowledged and they will be made a part of the official file on the application. Comments received as form letters or as petitions may be acknowledged as a group to the person or organi-

zation responsible for the form letter or petition. If comments relate to matters within the special expertise of another Federal agency, the District Engineer may seek the advice of that agency. The applicant must be given the opportunity to furnish the District Engineer his proposed resolution or rebuttal to all objections from Government agencies and other substantive adverse comments before final decision will be made on the application.

33 C.F.R. § 209.120(i)(1)(iii) (1975).

It is unclear from the regulation whether its terms applied only to the comment period as implied from "furnish to the District Engineer" or whether it applied to the period after the District Engineer had made his decision, as implied from "final decision." The regulations concerning the reviewing authority of the Division and Chief Engineers do not contain any indication that continuing agency objections at this level be furnished to the applicant. *See* 33 C.F.R. 290.120(p) (1975). In *Taylor v. District Engineer, United States Corps of Engineers*, 567 F.2d 1332 (5th Cir. 1978), the Fifth Circuit held the Corps' 1972 regulations constitutional but found that the Corps did not comply with them because it failed to disclose substantive objections received in response to a public notice during the comment period. The Court did not address the question of whether the Corps must disclose all agency comments during the decision making process of the Division and Chief Engineers.

The Court in *Taylor* also found the agency comments to be material. In the instant case, the comments were merely restatements of positions of which Deltona was aware and to which Deltona had already responded.

After a meticulous examination of the comments of the EPA and Department of Interior in question, the Court can find no new issue being discussed. The purpose of the comments in this case was a final co-ordination under 33 C.F.R. 209.120 Appendix B (Memorandum of Understanding Between the Secretary of the Interior and the Secretary of the Army) (1975), to prevent the issue being resolved by the Secretary of the Army. In deciding whether these statements were "substantive", the Court is also mindful that the EPA and the Department of Interior were advocating the denial of all three permits, while the Army Corps of Engineers desired to grant one and deny the other two. The three agencies, working together, as mandated by the regulations, resolved their conflict in favor of the Corps position.

There being no material facts in dispute, the Court finds that the Corps complied with its own regulations and that Deltona was not denied procedural due process.

■ Deltona contends it was denied substantive due process because the Environmental Protection guidelines were "retroactively" applied. An agency is bound to apply the law in effect at the time of its decision. Further, Deltona was not prejudiced by such an application because the Environmental Guidelines were the same as the already existing Corps guidelines on the wetlands. *See* 33 C.F.R. § 209.120(f)(3) (1975). Deltona's contention is therefore without merit as a matter of law.

■ Deltona further contends that the Corps is estopped to deny the issuance of the permits because the Corps knew of the "master plan" for Marco Island in 1964 and because of condition cc in the Roberts Bay Permit.

■ The consent of individual officials representing the United States cannot per se estop the United States, *Kaiser Aetna v. United States*, 444 U.S. 164, 179, 100 S.Ct. 383 (1979); *United States v. Florida*, 482 F.2d 205 (5th Cir. 1973), although courts have intimated that given "affirmative misconduct" the Government might be estopped, *INS v. Hibi*, 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973); *Montana v. Kennedy*, 366 U.S. 308, 81 S.Ct. 1336, 6 L.Ed.2d 313 (1961). Deltona has alleged nothing that could constitute "affirmative misconduct" in this instance. The disclosure of the plan in 1964 does not rise to this level, neither does condition cc of the Roberts Bay permit, especially in light of the explicit language

of condition bb. Deltona has not alleged any misrepresentation that would bar the Corps from obeying a mandate from Congress and thus there is no material issue of fact in dispute.

Deltona has also alleged that the Corps was without jurisdiction over the land in question. This argument is clearly without merit. Jurisdiction is conferred by 33 U.S.C. § 403 (the Rivers and Harbor Act § 10) and 33 U.S.C. § 1344 (Federal Water Pollution and Control Act § 404). Deltona applied for dredge and fill permits pursuant to these statutes and it is the denial of these permits that is presently at issue. There are no material disputed issues of fact.

The Court of Claims has before it the issue of whether the Corps of Engineers' denial of the permits constituted a taking of the property without just compensation. That issue is not properly before this Court. On the remaining issues of review of the Corps' decision pursuant to 5 U.S.C. § 706, the denial of due process, the estoppel of the Corps and the jurisdiction of the Corps, the Court finds that there are no material issues of fact and that Defendants are entitled to Summary Judgment as a matter of law.

It is accordingly,

ORDERED:

1. The Motion of Plaintiff, Deltona Corporation, to Transfer or in the Alternative to Stay is denied.

2. The Motion of the Defendants, Clifford Alexander, et al., for Summary Judgment is granted.

3. The Motion of the Defendant Intervenors, Environmental Defense Fund et al., for Summary Judgment is granted.

4. Final Judgment is hereby entered in favor of the Defendants Clifford Alexander, et al., and the Defendant Intervenor, Environmental Defense Fund, et al., and against the Plaintiff, The Deltona Corporation.