**SSH COMPANY, LTD., Plaintiff,**

v.

**SHEARSON LEHMAN BROTHERS INCORPORATED, Lawrence J. Green, Lehman Brothers Kuhn Loeb, Inc. and Shearson Lehman/American Express, Defendants.**

**No. 86 Civ. 5981(PNL).**

United States District Court, S.D. New York.

Dec. 24, 1987.

A. Richard Golub, New York City, for plaintiff; Gary S. Graifman, of counsel.

Shearson Lehman Brothers Inc., Office of the Gen. Counsel, New York City, for defendants; Theodore A. Krebsbach, Thomas E. Hommel, Jeffrey L. Friedman, of counsel.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Plaintiff alleges various instances of misrepresentation and deceptive practices by defendants in their handling of plaintiff's brokerage account. Defendants move to dismiss the complaint or, in the alternative, to stay federal proceedings pending arbitration. (Jurisdiction is asserted under both 28 U.S.C. § 1331 and 28 U.S.C. § 1332.) The defendants seek an order (1) dismissing plaintiff's claims which are based on rules of the New York Stock Exchange (NYSE) and the National Association of Securities Dealers (NASD); section 17(a) of the Securities Act of 1933 ("'33 Act"); section 206 of the Investment Advisers Act of 1940; and section 352–c of the General Business Law of the State of New York on the ground that no private right of action exists under those statutes; (2) dismissing the claims based on section 12(2) of the '33 Act and section 10(b) of the Securities Exchange Act of 1934 ("'34 Act") on the ground that plaintiff has failed to state a claim upon which relief may be granted; (3) dismissing plaintiff's claims based on fraud for failing to plead with the requisite particularity; (4) staying this action pending arbitration of all arbitrable claims; and (5) staying proceedings of the then nonarbitrable § 10(b) claim pending the Supreme Court's decision in *Shearson/American Express v. McMahon.*

Plaintiff opposes the motion contending that private causes of action have been implied under section 17(a) of the '33 Act and section 352–c of the New York General Business Law; that the complaint alleges an actionable claim with respect to § 12(2) of the '33 Act and § 10(b) of the '34 Act; that the complaint properly pleads fraud, or, in the alternative, that leave should be given to replead this claim; that the arbitrable claims are intertwined with the non-arbitrable claims and, thus, none should be compelled to arbitration; or, in the alternative, that claims not arbitrable should proceed in federal court.

*　　*　　*

Plaintiff's claims based on NYSE and NASD rules, section 17(a) of the '33 Act, section 206 of the Investment Advisers Act of 1940, section 352–c of the New York General Business Law; and section 12(2) of the '33 Act are dismissed. Plaintiff's claims based on section 10(b) of the '34 Act, the common law, and state law are compelled to arbitration.

*Background*

On a motion to dismiss the complaint, the facts as alleged in the complaint must be taken as true. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57 (2d cir. 1985). The complaint alleges the following facts:

Plaintiff SSH Company, Ltd. ("SSH") is a Connecticut corporation whose majority shareholder is Khusrow H. Nezhad ("Nezhad"). Defendant Lawrence J. Green ("Green") is a registered broker for defendant Lehman Brothers Kuhn Loeb ("LKL"). In the fall of 1983 Green had discussions with plaintiff's attorneys regarding the opening of an account at LKL. Green recommended that plaintiff open a nondiscretionary investment program developed by LKL which would be guided by sophisticated computer programs. The complaint alleges that Green represented to plaintiff that plaintiff would make 40% to 45% annual return using this investment program and that Green had never done worse for his clients than 35% on an annual basis. Green also informed plaintiff that he would only pursue the above investment strategy and would not invest in high risk securities. Green had reason to know that plaintiff was an inexperienced, unsophisticated investor and would thus rely heavily on defendants.

Plaintiff opened three non-discretionary accounts with defendants (hereinafter called "A Account," "B Account" and "Special Account"). Pursuant to the opening of these three accounts, plaintiff executed several agreements. On October 1, 1983, plaintiff executed a Client Equity Option Account Form in connection with the opening of the A account. This form contained the following arbitration clause: "Any controversy arising out of or relating to the account of the undersigned, to transactions with you for the undersigned or to this agreement or the breach thereof, shall be settled by arbitration." The same form was executed for the B account—however, on plaintiff's copy of that form, the arbitration clause was crossed out. (Defendants possess a copy of the fully executed agreement with the clause intact.) No form was executed for the Special account.

Plaintiff deposited approximately $1,200,-000.00 into the accounts. During the years 1983–1985, according to the complaint, Green, without prior notice to or consent from plaintiff, purchased and sold stock and options at a rate disproportionate to the size of plaintiff's accounts, and failed to apprise plaintiff of the risks relating to the trading that was being done by defendants. During this time it is alleged Green also made representations to plaintiff that his investments were earning 25%–40% per annum, and from the beginning of 1984, refused to send summary statements to plaintiff. On or about March 21, 1985, plaintiff's attorneys inquired as to plaintiff's account status and requested a formal accounting. Since they received no such accounting, plaintiff's attorneys conducted a net evaluation, completed in May 1985, revealing enormous losses. On June 11, 1985, plaintiff's attorneys corresponded with Green and asked him to transfer plaintiff's accounts to Paine Webber Jackson and Curtis. Green represented that he would, but failed to do so promptly and

thereby caused further losses. Plaintiff lost a total of $814,316.00.

*Discussion*

### A. *NYSE & NASD Rules*

■ Defendants argue that plaintiff's claims based on the rules of the NASD & NYSE must be dismissed because the rules contain no express provisions for civil liability and the courts in this circuit have refused to imply a private right of action to enforce these rules. *See e.g. Frota v. Prudential–Bache Securities, Inc.,* 639 F.Supp. 1186 (S.D.N.Y.1986); *Levine v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 639 F.Supp. 1391 (S.D.N.Y.1986); and *Newman v. L.F. Rothschid,* 651 F.Supp. 160 (S.D.N.Y.1986).

Plaintiff cites no precedent to justify the implication of a private right of action. Defendants' arguments are in accordance with Supreme Court authority. *See Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Touche Ross v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisers, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). Plaintiff's third and fourth causes of action are therefore dismissed.

### B. *Investment Advisers Act*

■ Defendants rely on the holding in *Transamerica Mortgage Advisers, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) that no private right of action exists under section 206 of the Investment Advisers Act of 1940. Plaintiff makes no argument in opposition. Accordingly, this claim is dismissed.

### C. *New York General Business Law section 352–c*

■ Defendants assert that plaintiff's claim under New York General Business Law § 352–c must be dismissed since the statute contains no express private right of action and none may be implied. In *CPC Int'l v. McKesson Corp.,* 70 N.Y.2d 268, 519 N.Y.S.2d 804, 514 N.E.2d 116 (1987), the New York Court of Appeals recently

held that no implied private cause of action exists under the statute. This claim must therefore be dismissed.

### D. *Section 17(a) of 1933 Act*

■ In support of its contention that a private right of action exists under this statute, plaintiff points to *Kirschner v. United States,* 603 F.2d 234 (2d Cir.1978). Although never explicitly overruled, *Kirschner's* authority has been cast in doubt. Its reasoning rests on the assumption that § 17 of the 1933 Act and § 10(b) of the 1934 Act are identical in scope and that "there [is] little practical point in denying the existence of an action under § 17 once it is established that an aggrieved buyer has a private right of action under § 10(b) of the 1934 Act." This reasoning has been brought into question by subsequent Supreme Court decisions.

Noting Professor Loss' observation that the *Kirschner* court reached its holding on this issue "with no analysis,"[1] Judge Friendly remarked in 1985 that *Kirschner* "may be open to reexamination . . . in light of [several] subsequent Supreme Court decisions." *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 559 n. 3 (2d Cir.1985). These decisions, *see e.g. Herman & MacLean v. Huddleston,* 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983), demonstrate that the court considers the issue of whether a private cause of action is available under § 17 to be unresolved. *See also Zerman v. Ball,* 735 F.2d 15, 20 (2d Cir.1984) (treating issue as unresolved).

Judge Haight, in *Ackerman v. Clinical Data, Inc.,* (1985–86 Transfer Binder) Fed. Sec.L.Rep. (CCH) ¶ 92,207 (S.D.N.Y. July 8, 1985) [Available on WESTLAW, 1985 WL 1884], amplifies Judge Friendly's comments in *Yoder.* The *Ackerman* opinion attacks the premise of *Kirschner*—that actions brought under § 17 of the '33 Act and § 10(b) of the '34 Act are identical—on several grounds. First, the reach of § 10(b) is limited to fraud "in connection with the purchase or sale of a security"

---

**1.** Loss, *Fundamentals of Securities Regulation* 1149 (1983).

and requires the plaintiff to be a purchaser or seller. The scope of § 17 is broader and encompasses fraud in the offer as well. Second, § 10(b) requires that plaintiff prove that defendant acted with scienter. *Aaron v. S.E.C.*, 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980), a post *Kirschner* decision, held that actions under §§ 17(a)(2) and (3) do not require proof of scienter. Thus, the statutes may no longer be considered to have the same elements.

Judge Haight also draws on two post-*Kirschner* Supreme Court opinions stressing the importance of legislative intent in searching for an implied right of action. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (no implied right of action under § 17(a) of 1934 Act); *Transamerica Mortgage Advisers, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (no implied right of action under Investment Advisors Act of 1940). Our perception of the legislative intent behind the '33 Act suggests that no private right of action was implied here. For §§ 11 and 12 of the '33 Act created express civil liability, with strict prerequisites, covering the same conduct. It is most unlikely that Congress simultaneously undermined the prerequisites by implying an otherwise duplicative cause of action.[2] Accordingly, although the *Kirschner* holding lingers, it can no longer be considered good law. The claim under § 17 of the 1933 Act is dismissed. Dismissal of this claim is further supported by the conclusion that the 1933 Act was aimed at *distributions* of stock and not post-distribution *trading* such is at issue here. *See* Loss, *Fundamentals of Securities Regulation* at 92 and discussion *infra* at 1059–1060.

### E.   § 12(2)

■   Plaintiff has not made out a claim under § 12(2) of the '33 Act because that section imposes liability only on a "person who ... offers or sells a security ... by means of a *prospectus or oral communi-*

*cation."* The phrase "prospectus or oral communication" refers to a prospectus, registration statement, or other communication related to batch offering of securities, not to subsequent trading. *See e.g. Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 277–78 (S.D.N.Y.1984) ("To be able to recover under section 12(2), the plaintiff must prove that his shares were issued pursuant to the defective prospectus."). *Accord Ackerman*, (1985–86 Transfer Binder) Fed.Sec.L.Rep. at 91,568; *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080 (S.D.N.Y.1977), *aff'd*, 636 F.2d 1201 (2d Cir.1980). The purpose of the '33 Act was the regulation of the *distribution* of securities. Post-distribution trading is regulated by the '34 Act. *See* L. Loss, *Fundamentals of Securities Regulation* (1983) at 92.

Defendants' motion to dismiss the claim based on § 12(2) of the '33 Act is granted.

### F.   Arbitration

■   At the request of defendants, decision on this motion was delayed pending the Supreme Court's decision in *Shearson/American Express, Inc. v. McMahon.* The Supreme Court has now decided the case. *Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The Court held that contractual agreements to arbitrate claims asserted under § 10(b) of the 1934 Act are enforceable. Arbitration of these claims is therefore compelled. I do not reach defendants' contentions that these claims should be dismissed under the common enterprise test of *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) or for lack of specificity in pleading. Those contentions should be addressed to the arbitrators.

### G.   Scope of Arbitration Agreements

The parties do not dispute that the arbitration agreement executed in connection with A account covers also disputes arising

---

**2.** "The literature of both contemporaneous and subsequent commentators is unanimous that § 17 was meant only to afford a basis for injunctive relief and criminal prosecution, not to supplement the civil liabilities set out in §§ 11 and 12." *Bruns v. Ledbetter,* 583 F.Supp. 1050, 1053 (S.D.Cal.1984).

in the Special account. Plaintiff claims however that the B account was covered by a separate agreement which expressly excluded arbitration. The copies of the B account agreement proffered by defendants and defendants differ as to the crucial clause. A hearing will be held to determine the terms of the agreement entered into as to the B account.

*Conclusion*

All portions of the first cause of action are dismissed except for the § 10(b) claims which—to the extent they relate to the A account and Special account—are compelled to arbitration. The second, third, fourth, and fifth causes of action are dismissed. A hearing will be held on the terms of the B account agreement. Decision is reserved on the § 10(b) claim as it relates to the B account.