**T. ROWE PRICE NEW HORIZONS FUND, INC., et al., Plaintiffs,**

v.

**Michael O. PRELETZ, et al., Defendants.**

**Civ. A. No. HAR90–230.**

United States District Court, D. Maryland.

Oct. 22, 1990.

Henry H. Hopkins, Baltimore, Md., Daniel A. Pollack, Pollack & Kaminsky, New York City, for plaintiffs.

Herbert Better, Baltimore, Md., Roger Spaeder, Stephen H. Glickman, Washington, D.C., for defendants.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Presently before this Court is a motion by defendants to dismiss for lack of personal jurisdiction and venue or, alternatively, to transfer this action. Also before this Court is a motion by defendants to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The issues have been fully briefed. No hearing is deemed necessary. Local Rule 105.6.

### FACTS

The Complaint in this case alleges that Defendants, Michael O. Preletz and Robert L. Deinhammer, executive officers of

ADAC Laboratories, Inc., (ADAC) sold over 500,000 shares of their personal holdings of ADAC common stock approximately four weeks before ADAC announced poor earnings results for the quarter. Upon the announcement of poor earnings, the price of ADAC stock declined. Plaintiffs, two Maryland-based mutual funds which bought the stock which the Defendants sold, allege that Defendants took unfair advantage of them by not disclosing the true condition of their company, in violation of the Insider Trading Act and other provisions of the federal securities laws.

## I.

Defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction over Defendants, and improper venue. Alternatively, Defendants request that this Court transfer the above-captioned matter to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

■ First, Defendants argue that they have insufficient contacts with Maryland to be subject to personal jurisdiction in this District. However, the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa *et seq.*, provides for nationwide service of process. Moreover, there is no evidence that exercising personal jurisdiction over the Defendants in this case would offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ Second, Defendants claim that venue is improper in this District. Under § 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, however, venue is proper in any district where any act or transaction which is part of the fraud took place. Plaintiffs, while in Maryland, had telephone calls with Defendants' broker, during which the purchase of the ADAC stock at issue was negotiated and then effected. Thus, the telephone calls constitute an "act or transaction" which is part of the alleged fraud, and sustain venue in this District.

■ Finally, Defendants move to transfer this case to the Northern District of California. Defendants have failed to demonstrate that the balance of convenience and the interests of justice in this matter support transferring this action. *Quality Inns International, Inc. v. Orlando Colonial Motel West, Inc.*, Civ. Action No. HAR 89–876, 1990 WL 27871, 1990 U.S. Dist. Lexis 2897 (D.Md. Feb. 2, 1990). In this action, Plaintiffs have chosen a forum in which their headquarters, witnesses, and documents are located. Granting Defendants' motion to transfer the case would simply shift the alleged inconvenience from Defendants to Plaintiffs.

■ Defendants also argue that the case should be transferred to the Northern District of California for possible consolidation with a pending California action in the Northern District. Defendants assert that the California action includes insider trading allegations against Defendants Preletz and Deinhammer that are identical to the allegations asserted in the case at bar. However, the California action is a class action which will require the resolution of preliminary issues which are not raised in this case. The California action is considerably broader in that it has seven defendants and covers almost an entire year of trading. These factors will make discovery and the action in general considerably more complicated and time-consuming, thus making a transfer of this case to the Northern District of California unwise. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 444 F.Supp. 288, 291 (S.D.N.Y.1977); and *Deltona Corp. v. Alexander*, 504 F.Supp. 1280 (M.D.Fla.1980), aff'd, 682 F.2d 888 (11th Cir.1981).

## II.

With regard to Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, Defendants first argue that Plaintiffs' claim under § 12(2) of the Securities Act of 1933 fails because the Plaintiffs purchased their shares of ADAC stock in the secondary market, and not as part of an initial offer-

ing. Thus, Defendants contend, the transaction is not covered by the 1933 Act.

Neither the Fourth Circuit nor the District of Maryland has addressed the question of whether the Securities Act of 1933 applies only to initial offerings of securities or whether it extends to cover the trading of securities in the secondary market. The majority of federal district courts to consider the issue hold that the Act does not encompass the trading of securities in the secondary market.[1] *Grinsell v. Kidder, Peabody & Co.*, 744 F.Supp. 931 (N.D.Cal. 1990).

Section 12(2) states:

> Any person who ... offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading ... shall be liable to the person purchasing such security from him.

15 U.S.C. § 77*l* (2).

■ Plaintiff argues that no language in § 12(2) limits the section's application to initial offerings or the distribution of new securities. As such, Plaintiff claims that the language of § 12(2) presents a clear legislative directive from Congress not to limit the section's application to initial offerings. In support of this assertion, Plaintiff cites *Elysian Fed. Sav. Bank v. First Interregional Equity Corp.*, 713 F.Supp. 737, 748–51 (D.N.J.1989), and *Scotch v. Moseley, Hallgarten, Estabrook & Weeden, Inc.*, 709 F.Supp. 95, 96–98 (M.D.Pa. 1988).

Defendant asserts that the phrase "prospectus or oral communication" in § 12(2) provides language limiting the scope of § 12(2) in that the phrase refers to a communication related to an initial batch offer-

ing of securities, not to the secondary trading of shares already outstanding. *See, e.g., Mix v. E.F. Hutton & Co.*, 720 F.Supp. 8, 11 (D.D.C.1989); *First Union Brokerage v. Milos*, 717 F.Supp. 1519, 1522 (S.D.Fla. 1989); *SSH Co. v. Shearson Lehman Brothers, Inc.*, 678 F.Supp. 1055, 1059 (S.D.N.Y.1987).

This Court finds the "prospectus or oral communication" language of § 12(2) ambiguous on the issue. Furthermore, mere silence in the statutory language on the issue is not sufficient for a finding that Congress intended not to limit the scope of § 12(2). In other words, this Court will not construe the mere absence of words limiting the application of the section alone as evidence of Congressional intent for the statute to apply broadly. Conversely, this Court will not use the absence of clear language as an indication that Congress intended to limit the scope of § 12(2).

Plaintiff urges this Court to consider the legislative purpose behind the Act in order to determine the application of § 12(2). Plaintiff directs the Court to the preamble to the Act, which states:

> An Act to provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes.

Because the preamble does not explicitly restrict the scope of § 12(2) to the initial offering and distribution of securities, Plaintiff argues that the preamble is evidence of a legislative purpose not to restrict the scope of the legislation. However, like silence in the text of § 12(2), silence in the preamble does not provide an adequate indication of the intended application of the section.

Not finding a resolution of the issue from the statutory language or purpose,

---

1. *See, e.g., Mix v. E.F. Hutton & Co.*, 720 F.Supp. 8, 10–12 (D.D.C.1989); *Panek v. Bogucz*, 718 F.Supp. 1228, 1232 (D.N.J.1989); *First Union Brokerage v. Milos*, 717 F.Supp. 1519, 1522 (S.D. Fla.1989); *Cheltenham Bank v. Drexel Burnham Lambert, Inc.*, [Current Binder] Fed.Sec.L.Rep. (CCH para. 94,391 at 92,542, 1989 WL 80279 (E.D.N.C.1989); *Strong v. Paine Webber, Inc.*,

700 F.Supp. 4, 5 (S.D.N.Y.1988); *Ralph v. Prudential–Bache Secur., Inc.*, 692 F.Supp. 1322, 1324–25 (S.D.Fla.1988); *Leonard v. Shearson Lehman/American Express, Inc.*, 687 F.Supp. 177, 179 (E.D.Pa.1988); *SSH Co. v. Shearson Lehman Brothers, Inc.*, 678 F.Supp. 1055, 1059 (S.D.N.Y.1987); *Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 277–78 (S.D.N.Y.1984).

we will turn to the Act's legislative history. As Defendant argues, the legislative history shows that the entire Securities Act of 1933 is limited in scope. The key House committee report states that the Act was intended to "affect[ ] only new offerings of securities ... [and] does not affect the ordinary redistribution of securities unless such redistribution takes on the characteristics of a new offering ..." H.R.Rep. No. 85, 73d Cong., 1st Sess. 5 (1933). Further, the Act's legislative history indicates that the 1933 Act was intended to regulate the distribution of securities,[2] while the 1934 Act regulates post-distribution trading. *SSH Co. v. Shearson Lehman Brothers, Inc.*, 678 F.Supp. 1055, 1059 (S.D.N.Y. 1987). Thus, the legislative history of the 1933 Act makes it clear that § 12(2).applies to initial offerings of securities, and not to the secondary trading of shares.

In view of this Court's determination that § 12(2) is inapplicable to sales of stock in the secondary market, and that § 12(2) consequently is inapplicable to the wrongful acts alleged in the case at bar, this court need not rule on Defendant's contention that the complaint fails to allege with requisite particularity the use of a misleading prospectus or oral communication, an essential element of a § 12(2) violation.

### III.

■ Next, Defendants argue that Plaintiffs' assertion of an insider trading claim under § 20A of the Securities Exchange Act of 1934, added by Pub.L. 100–704, § 5, 102 Stat. 4680 in Count I precludes the assertion of what allegedly is the identical claim, characterized as if it were a distinct claim under § 10(b) of the exchange act and Rule 10b–5, in Count III. Accordingly, the Defendants ask that Count III be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because it does not state a claim for relief that is different from Count I.

Plaintiffs argue that Rule 10b–5 and § 20A can be pled alternatively, under the theory that the remedies of the federal securities laws are cumulative, not exclusive. See, e.g., *Schaefer v. First Nat. Bank*, 509 F.2d 1287, 1292 (7th Cir.1975), cert. denied, 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976). They point to the language of § 20A(d), 15 U.S.C. § 78t–1(d), which states:

> Nothing in this section shall be construed to limit or condition the right of any person to bring an action to enforce a requirement of this chapter or the availability of a cause of action implied from a provision of this chapter.

This Court agrees with Defendants, however, who contend that the language in § 20A(d) is intended to preserve certain implied rights of action for persons other than contemporaneous traders, a category of plaintiff not addressed in § 20A. *See* H.Rep. No. 910, 100th Cong., 2d Sess. pp. 27–28 (1988), *reprinted in* 1988 U.S.Code Cong. & Admin.News 6043, 6064–65. Because Plaintiffs allege that they are contemporaneous traders, Plaintiffs cannot assert § 20A(d) as a basis for alternatively pleading § 20A and Rule 10b–5.

Moreover, after examining the interrelationship between § 20A and Rule 10b–5, this Court is compelled to find that Plaintiffs cannot alternatively plead § 20A and Rule 10b–5. Section 20A, by its express terms, is applicable only if there has been an insider trading violation of another provision of the securities laws (here, Rule 10b–5). Thus, as Defendants maintain, to state a claim under § 20A, the contemporaneous trader plaintiff must plead a Rule 10b–5 violation.

Once such a claim is pled, it is governed by the restrictions of § 20A, including § 20A's limit on damages.[3] Defendants as-

---

**2.** The U.S. Supreme Court has held that § 17(a) of the 1933 Act applies to secondary market transfers. "The Court carefully pointed out, however, that 'the 1933 Act was primarily concerned with the regulation of new offerings, ... § 17(a) was meant as a major departure from that limitation.'" *Grinsell v. Kidder Peabody & Co.*, 744 F.Supp. 931 quoting *U.S. v. Naftalin*,

441 U.S. 768, 777, 99 S.Ct. 2077, 2084, 60 L.Ed.2d 624 (1979).

**3.** "The total amount of damages imposed under subsection (a) shall not exceed the profit gained or the loss avoided in the transaction or transactions that are the subject of the violation" 15 U.S.C. § 78t–1(b)(1) (Supp.1989).

sert that the damage limitations reflect the concern of Congress to balance the Plaintiff's need for relief, and fairness to Defendants, who might otherwise be subject to multiple damage awards far exceeding the extent of their wrongful profit. Permitting Rule 10b–5 and § 20A to be pled alternatively would undermine the damage limitations of § 20A. In keeping with the balance intended by Congress, Rule 10b–5 and § 20A cannot be pled alternatively in this case.

## IV.

Defendants next claim that all four counts of the complaint are defective because they are predicated in part on the sale of ADAC stock by Defendant Deinhammer on December 7, 1989. As such, Defendants contend that Plaintiffs have no standing to complain about that sale because Plaintiffs completed their purchases one day earlier, on December 6, 1989. Therefore, Defendants assert that it would be impossible for Deinhammer's alleged failure to make required disclosures in conjunction with his subsequent sale to cause Plaintiffs any injury.

Plaintiffs contend that discovery may well show that the December 7, 1989 sale was simply a carry-over of the sale ordered and commenced on or prior to December 6, 1989. Simple logic demonstrates that whether or not the sale was ordered and commenced on or prior to December 6, 1989, it was impossible for Deinhammer's stock sales on December 7, 1989 to have harmed the Plaintiffs, who completed their purchases on December 6, 1989.

## V.

Finally, Defendants argue that the allegations of fraud underlying all of the counts in the complaint are insufficient as a matter of law because they fail to satisfy the particularity requirements of Fed.R. Civ.P. 9(b). Specifically, Defendants maintain that Plaintiffs have failed to allege the element of scienter with adequate particu-

larity. Defendants argue that Plaintiffs relied solely on the status of the Defendants as corporate executives in alleging that Defendants knew of adverse information with regard to ADAC's financial situation.

Federal Rule of Civil Procedure 9(b) requires only general allegations for pleading scienter.[4] In view of this standard, Plaintiffs have satisfied the requirements of particularity in Fed.R.Civ.P. 9(b). In fact, Plaintiffs clearly do more than merely state that Defendants should have known about ADAC's financial picture in their positions as corporate executives. For instance, Plaintiffs allege that Defendants learned of a serious downturn in ADAC's business operations, specifically, significant delays and decreases in orders for ADAC's equipment (Complaint, para. 10). Plaintiffs allege that Defendants sold their stock without disclosure of the material, non-public information, (Complaint, para. 15) and that "[t]heir conduct was motivated by a fraudulent intention to increase their profits and to minimize any losses on their sales of the ADAC stock ..." (Complaint, para. 26).

Rule 9(b)'s aim is "to provide the defendant fair notice of the basis of plaintiff's claim and to protect defendant's reputation from groundless accusations of fraud incited by the possibility of an 'in terrorem increment' in the settlement value of a lawsuit." (citations omitted). *In re Coleco Securities Litigation,* 591 F.Supp. 1488, 1489 (1984). The allegations of fraud in Plaintiffs' Complaint in the case at bar are sufficiently detailed to comply with the goal of Rule 9(b).

This Court notes, however, that under Maryland law, it is well settled that fraud cannot be pled generally. *Jenifer v. Kincaid,* 59 A.2d 765, 191 Md. 120 (1948). Neither party has addressed the impact of Maryland law on the allegations of fraud in this case. Thus, those allegations of fraud brought which would be governed by Maryland law, such as the Plaintiff's common law fraud claim, may be found insufficient-

4. "Malice, intent, knowledge, and other condition of mind of a person may be averred gener-

ally." Fed.R.Civ.P. 9(b).

ly particular to satisfy the requirements of Maryland law. Because neither party has presented this issue to the Court thus far, this Court merely notes the possibility that the issue may be addressed at some future time.

## VI.

Therefore, this Court denies Defendants' motion to dismiss for lack of personal jurisdiction and venue, and denies Defendants motion to transfer this action to the Northern District of California. This Court grants Defendants' motion to dismiss for failure to state a claim with regard to the claim in Count II of the Complaint which asserts a claim under Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2). This Court, pursuant to Fed.R.Civ.P. 12(b)(6), dismisses the Rule 10b–5 claim in Count III, because it fails to state a claim for relief separate from Count I. Defendants motion to dismiss the portions of the complaint alleging injury or requesting relief in connection with trading by Defendant Deinhammer on December 7, 1989, is granted. Defendant's motion to dismiss the complaint on grounds that it fails to plead fraud with particularity is denied. It will be so ordered.