Thomas R. BENNETT, Jr., Plaintiff,

v.

BALLY MANUFACTURING CORP.,
Roger N. Keesee and Paul J.
Johnson, Defendants.

Civ. A. No. 2:91–3187–18.

United States District Court,
D. South Carolina,
Charleston Division.

Feb. 13, 1992.

Russell E. Jeter, Jr., Columbia, S.C., William D. Heinz, Norman M. Hirsch, Andrew J. Zahaykevich, Chicago, Ill., for plaintiff.

Henry E. Grimball, Charleston, S.C., for defendants.

## ORDER

NORTON, District Judge.

This matter is before the Court on plaintiff's motion for remand and defendants' motion to transfer venue.

## BACKGROUND

On September 27, 1991, plaintiff Thomas Bennett, Jr., brought this action against defendants Bally Manufacturing Corporation ("Bally"), Roger N. Keesee and Paul J. Johnson in the South Carolina Court of Common Pleas for the County of Charleston, and on October 15, 1991 filed an

amended complaint.[1] In his amended complaint, Mr. Bennett alleges that Bally and two of its former officers, Roger Keesee and Paul Johnson, committed federal securities laws violations, common law fraud and negligent misrepresentation.

Mr. Bennett's amended complaint is identical in many respects to several other complaints previously filed against Bally (the "Chicago complaints") in the United States District Court for the Northern District of Illinois. One of the few, but significant, distinctions between the Chicago complaints and Mr. Bennett's amended complaint is the federal securities law relied upon by the plaintiffs. The Chicago complaints set forth federal securities law claims pursuant to § 10(b) of the 1934 Securities Act, 15 U.S.C. § 78j (the "1934 Act"), while Mr. Bennett relies upon § 12(2) of the 1933 Securities Act, 15 U.S.C. § 77*l* (the "1933 Act").

Defendants removed the case to this Court, and moved to transfer the case to the United States District Court for the Northern District of Illinois. In response, Mr. Bennett moved this Court to remand the case to state court. The Court first turns to Mr. Bennett's motion for remand.

### ANALYSIS

### I. MOTION FOR REMAND

A case may only be removed to federal court if the case could have been brought there originally. 28 U.S.C. § 1441(a). Moreover, even if a case could have originally been brought in federal court, it may not be removed if an Act of Congress has "expressly provided" that the claim is non-removeable. *Id.* Mr. Bennett argues that because the 1933 Act expressly provides that claims brought pursuant to the Act may not be removed, defendants improperly removed this case to federal court in violation of the 1933 Act, and this action must be remanded to state court.

Section 77v(a) (Supp.) states, in pertinent part, that "no case arising under this subchapter and brought in any State Court of competent jurisdiction shall be removed to any court of the United States." At first glance, this appears to be a clear case of improper removal. However, tear away the facade and the issue becomes a bit more cloudy, for merely alleging a claim under a statute that forbids removal will not necessarily protect a complaint from being removed.

Defendants argue that they properly removed this action to federal court based on diversity of citizenship because it is clear that § 12(2) does not apply to Mr. Bennett's claim. Defendants contend that § 12(2) does not apply to the type of transaction at issue here and that therefore, plaintiff cannot rely on § 12(2) to prevent this action from being removed, if it is otherwise removable.

▮ It is a defendant's burden to prove that a case was properly removed. *Hinks v. Associated Press*, 704 F.Supp. 638 (D.S.C.1988). In determining whether defendants have met their burden here, plaintiff urges this Court to impose the test used by the court in *Peoples Nat'l Bank v. Darling*, 1991 WL 45716 (D.Kan.1991). In that case, the court held that "a state-filed 1933 Act claim will not prevent removal if the claim is so baseless and colorable as to constitute a fraudulent attempt to defeat jurisdiction of the federal court."

▮ Because this Court is disinclined to focus its inquiry on a plaintiff's intent in filing a claim as a basis for deciding removeability, the Court declines to apply the test used by the *Peoples Nat'l Bank* court. Unlike the court in that case, this Court does not believe that any wrongful intent needs to be established in order to defeat a motion for remand.[2] Rather than conduct

---

**1.** In his initial complaint, plaintiff alleged a violation of § 17(a) of the 1933 Securities Act, 15 U.S.C. § 77q, but amended his complaint to replace his § 17(a) claim with a claim pursuant to § 12(2) of the same Act after defendants informed him that § 17(a) does not permit a private right of action.

**2.** A focus on intent could lead to the potentially undesirable and inequitable result of permitting an uninformed attorney who ignorantly files a claim under the wrong statute in state court to return to state court, but requiring a more informed, but devious, attorney to litigate in federal court.

a subjective test, this Court chooses to conduct an objective one, and accordingly rules that defendants may defeat the motion for remand if they can show that the § 12(2) claim is unsupported by the clear weight of legal authority.

■ Thus, although defendants in this case suggest that plaintiff may have purposefully stated a claim under § 12(2) which he knew to be improper merely to invoke the clause prohibiting removal to federal court, this Court will not address the reason for plaintiff's decision to bring a § 12(2) claim, but will only address whether the § 12(2) claim is clearly unsupported by law.

■ Defendants assert that it is clear that § 12(2) does not apply to secondary market transactions, the type of transactions alleged by Mr. Bennett. Defendants note that in support of his argument that § 12(2) applies to secondary transactions, Mr. Bennett has only cited cases that have been reversed or overruled, and cases whose continuing validity is, at the very least, questionable. For instance, plaintiff relies primarily on the district court case of *Ballay v. Legg Mason Wood Walker, Inc.,* 1989 WL 156649 (E.D.Pa.1989). However, the Pennsylvania court's ruling that § 12(2) applies to secondary market transactions was reversed on appeal, 925 F.2d 682 (3d Cir.), *cert. den'd,* —— U.S. ——, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991), prior to the date plaintiff filed the instant complaint. This Third Circuit decision, the only federal appellate court opinion addressing the issue, overruled another case cited by plaintiff, *Elysian Fed. Sav. Bank v. First Interregional Equity Corp.,* 713 F.Supp. 737 (D.N.J.1989). The two remaining decisions cited by plaintiff have not been overruled, but are of very limited persuasive value because the district courts in those decisions relied extensively on the reversed and overruled decisions cited by plaintiff.

In contrast, defendants cited several cases, in addition to *Ballay,* that found § 12(2) inapplicable to secondary market transactions. *See, e.g., T. Rowe Price New Horizons Fund, Inc. v. Preletz,* 749 F.Supp. 705, 709 (D.Md.1990); *Grinsell v.*

*Kidder, Peabody & Co.,* 744 F.Supp. 931, 934 (N.D.Cal.1990); *Cheltenham Bank v. Drexel Burnham Lambert, Inc.,* 1989 Fed. Sec.L.Rep. (CCH) ¶ 94,391, 92,542, 1989 WL 80279 (E.D.N.C.), *certification den'd,* 1989 Fed.Sec.L.Rep. (CCH) ¶ 94,564, 1989 WL 119062 (E.D.N.C.1989); *Leonard v. Stuart–James Co.,* 742 F.Supp. 653, 658 (N.D.Ga.1990); *Mix v. E.F. Hutton & Co.,* 720 F.Supp. 8, 12 (D.D.C.1989); *McCowan v. Dean Witter Reynolds, Inc.,* 1989 Fed. Sec.L.Rep. (CCH) ¶ 94,423, 92,727, 1989 WL 38354 (S.D.N.Y.), *appeal dismissed,* 889 F.2d 451 (2d Cir.1989); *First Union Brokerage v. Milos,* 717 F.Supp. 1519, 1523 (S.D.Fla.1989); *Strong v. Paine Webber, Inc.,* 700 F.Supp. 4, 5 (S.D.N.Y.1988); *Ralph v. Prudential–Bache Sec., Inc.,* 692 F.Supp. 1322, 1324 (S.D.Fla.1988); *SSH Co. v. Shearson Lehman Bros.,* 678 F.Supp. 1055, 1059 (S.D.N.Y.1987); *Klein v. Computer Devices, Inc.,* 591 F.Supp. 270, 277 (S.D.N.Y.1984); and *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1095 (S.D.N.Y.1977), *aff'd,* 636 F.2d 1201 (2d Cir. 1980).

In a last ditch, but futile, effort to persuade the Court that § 12(2) applies to secondary market transactions, plaintiff provided the Court with snippets of legislative history. Specifically, plaintiff cited Congressional testimony by United States Representatives Rayburn, Sabath and Parker which purports to bolster the contention that § 12(2) applies to secondary market transactions. In response, defendants provided the Court with more lengthy portions of the relevant testimony which demonstrates the context in which the testimony was made. A perusal of the more expansive excerpts of testimony provided by defendants makes it quite clear that, far from proving that § 12(2) applies to secondary market transactions, the testimony proves just the opposite.

The Third Circuit came to a similar conclusion. It conducted an extensive review of the legislative history of § 12(2) and determined that it was Congress' intent that § 12(2) should not apply to secondary market transactions. *Ballay* at 693. Upon review of the legislative history and the

judicial decisions addressing the matter, the Court finds that the clear weight of authority supports defendants' contention that § 12(2) does not apply to secondary market transactions. Consequently, defendants were justified in discounting the 1933 Act's nonremoveable clause and removing this case to federal court and plaintiff's motion for remand must be denied.

## II. DEFENDANTS' MOTION TO TRANSFER

■ Next, defendants move, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the United States District Court for the Northern District of Illinois, Eastern Division (the "transferee court"). Section 1404(a) provides that a district court may transfer any civil action to any other district where the action may have been brought initially,[3] (1) for the convenience of the parties; (2) for the convenience of the witnesses; and (3) in the interests of justice. For reasons stated more fully below, the Court grants defendants' motion to transfer.

The most compelling reason cited by defendants in support of transfer was the pendency of five similar actions in the transferee forum against the instant defendants. However, United States District Judge Aspen dismissed those actions on February 5, 1992.[4]

While the Court acknowledges that the dismissal of those actions lessens somewhat the forcefulness of defendants' arguments in favor of transfer, the Court finds that despite the dismissal, the prior pendency of those actions still provides support for the transfer of this case. First, the Court that presided over the Chicago actions is very familiar with the issues presented in this action, having dealt with those issues in the related actions. Second, that Court decided some discovery issues in those actions, many of which may be raised

in this action. In particular, the Court in the Chicago actions issued a protective order regarding many of the documents which will be a target of discovery in this case. Finally, the plaintiffs in those related actions have informed defendants that they will move to amend their complaints, thus leaving open the possibility that those actions will be rejuvenated.

Even in the absence of the related cases, several other factors warrant transfer. First, most of the evidence that will be produced in this case finds its home in the transferee forum. Specifically, voluminous documents [5] pertaining to this case are at Bally's corporate headquarters in Chicago, whereas plaintiff has not identified any significant amount of document production that must take place in this forum.

Second, most of the witnesses—party and non-party—reside in Illinois. Defendants maintain that they will call several crucial non-party witnesses to testify in their defense. These witnesses include Robert E. Mullane, Chairman of the Board and Chief Executive Officer of Bally during the time in question; Gerald Smith, a partner at the accounting firm of Ernst & Young who supervised the preparation of the annual report in question; and William E. Chandler, Chief Financial Officer of Bally during the time in question. None of these witnesses are presently employed by Bally and all are beyond the subpoena power of this Court. Yet defendants contend, and plaintiff does not dispute, that each of these witnesses is crucial. Because these witnesses cannot be subpoenaed to testify here, plaintiff will be required to travel to Illinois to depose them and to use the deposition testimony in lieu of live testimony at trial, if the witnesses are unwilling to travel to South Carolina.

While plaintiff does not dispute that these are critical witnesses, he counters

---

**3.** It is undisputed that this action could have been brought in the Northern District of Illinois initially.

**4.** Before the Court was defendants' motion to dismiss and a motion for class certification by the plaintiffs in the five related actions. Prior to granting defendants' motion to dismiss, the

Court granted plaintiffs' motion for class certification.

**5.** As of the date of the hearing on this motion, Bally had produced over 20,000 pages of documents from its headquarters.

that he has two non-party witnesses that reside in South Carolina who would be beyond the subpoena power of the transferee court, but subject to its power here. Those witnesses are Bonnie Williams, who is expected to testify about conversations she allegedly had with Bally's Paul Johnson in which she claims Mr. Johnson made materially misleading statements about the financial condition of Bally; and Brooks Johnson, who is expected to testify about his financial encounters with Bally and unspecified conversations he had with Bally representatives. From the brief descriptions of the evidence expected to be elicited from these non-party witnesses, it appears that only Ms. Williams' testimony may be a critical part of plaintiff's case.

Finally, defendants expect to call several party witnesses to testify. Those witnesses include the two individual defendants, Mr. Keesee and Mr. Johnson; Director and Chairman of Bally's Audit Committee, Patrick L. O'Malley; and Bally vice president James N. Rochford. Messrs. O'Malley and Rochford each signed the 1989 annual report at issue in this litigation.

In summary, the only reason articulated by plaintiff for staying in this forum is that two non-party witnesses, only one of which appears to be even potentially critical, reside here. On the other hand, defendants have provided substantial reason for transferring the case to the Northern District of Illinois. The judge who would likely preside over the case has spent one and one-half years presiding over five related actions, thus becoming quite familiar with the issues, especially those concerning discovery; much discovery has already taken place in those cases and was previously subject to a protective order; either all or almost all of the documents at issue are in Chicago; a majority of non-party witnesses reside in Illinois; and a majority of party witnesses reside in Illinois.

■ While it is true that a plaintiff's choice of forum is entitled to great deference, that choice is not unfettered. Where a defendant is able to show that the convenience of parties and witnesses and the interests of justice weigh heavily in favor of a transfer, the plaintiff's choice must give way to the important objective of judicial economy. The Court finds that the balance weighs heavily in favor of the defendants, for in this case, transfer would promote the just and efficient conduct of the litigation. Even in light of the recent dismissal of the related Chicago actions, the interests of justice would be served if this case were transferred to the Northern District of Illinois, where a judge intimately involved with the issues present here presides, and where a substantial portion of the documentary and testimonial evidence is present. It is, therefore,

ORDERED that plaintiff's motion for remand to state court be DENIED. It is further

ORDERED that defendants' motion to transfer this case to the United States District Court for the Northern District of Illinois, Eastern Division, be GRANTED.

IT IS SO ORDERED.