**BUDGET RENT A CAR SYSTEMS, INC., a Delaware corporation, Plaintiff,**

v.

**Frank HIRSCH, Leonard A. Solomon, and Gerson, Preston & Company, P.A., a Florida Corporation, Defendants.**

No. 91–2526–CIV.

United States District Court, S.D. Florida.

Oct. 23, 1992.

---

**5.** The defendant, Mountain Fuel, is owned by   Questar Company.

Richard E. Brodsky, Jenner & Block P.A., Miami, FL, for plaintiff.

Isaac M. Jaroslawicz, Bruce J. Berman, Weil, Gotshal & Manges, Jamie A. Cole, Kluger, Peretz, Kaplan & Berlin, Miami, FL, for defendants Hirsch and Solomon.

James J. Kenny, Kenny, Nachwalter, Seymour, Arnold & Critchlow, P.A., Miami, FL, for defendants Gerson and Preston.

## OMNIBUS ORDER

HIGHSMITH, District Judge.

THIS CAUSE comes before the Court upon the following motions:

(1) Defendants FRANK HIRSCH and LEONARD A. SOLOMON's ("Hirsch and Solomon") Motion for Judgment on the Pleadings, filed November 26, 1991, challenging the legal sufficiency of Count III under Section 12(2) of the Securities Act of 1933;

(2) Defendants Hirsch and Solomon's Second Motion for Judgment on the Pleadings, filed December 26, 1991, challenging the legal sufficiency of Counts I, II and III under the applicable statute of limitations; and

(3) Defendant GERSON, PRESTON & COMPANY, P.A.'s ("Gerson") Motion to Dismiss, filed on December 18, 1991, challenging the legal sufficiency of Counts VI through VIII under the applicable statute of limitations.

By order dated March 25, 1992, the Court referred Defendants' Motions to United States Magistrate Judge Ted E. Bandstra for a Report and Recommendation. Magistrate Bandstra filed a Report and Recommendation, dated July 13, 1992, recommending denial of all three motions. For the reasons stated in Magistrate Bandstra's Report, this Court denies (1) Gerson's

Motion to Dismiss as to Counts VI through VIII and (2) denies Hirsch and Solomon's Second Motion for Judgment on the Pleadings as to Counts I and II. This Court, however, disagrees with Magistrate Bandstra's analysis of Count III. Therefore, for reasons more fully stated below, the Court grants Hirsch and Solomon's Motion for Judgment on the Pleadings as to Count III.

## STANDARD OF REVIEW

U.S. District Courts apply a "fairly restrictive standard in ruling on motions for judgment on the pleadings." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (1990). To obtain a judgment on the pleadings, the moving party must clearly establish that no material issue of fact remains unresolved, and that it is entitled to judgment as a matter of law. *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir.1973).[1] Moreover, the district court must view the facts presented in the pleadings, and all inferences drawn thereof, in the light most favorable to the non-moving party. Wright & Miller, at § 1368 (citing *Miami Herald Pub. Co. v. Ferre*, 636 F.Supp. 970, 974 (S.D.Fla.1985)). Indeed, allegations in the complaint must be accepted as true. *Swerdloff v. Miami Nat'l. Bank*, 584 F.2d 54, 57 (5th Cir.1978).

The standard of review for judgment on the pleadings is almost identical to the standard used to decide motions to dismiss. *Ferre*, 636 F.Supp. at 674. Therefore, the district court may issue a judgment on the pleadings only if it is beyond doubt that the non-movant can plead no facts that would support the claim for relief. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988) *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)).

## DISCUSSION

### A. Factual Background

This dispute arose from the sale of stock by Defendants Frank Hirsch and Leonard A. Solomon ("Hirsch and Solomon") to Plaintiff Budget Rent–A–Car Systems, Inc. ("Budget"). On September 1, 1990, Budget purchased almost all of the stock of its largest franchisee, Diversified Systems ("Diversified"), from various individuals and trusts, including Hirsch and Solomon. At the time of the sale, Hirsch and Solomon were majority shareholders, officers and directors in Diversified. They had originally acquired the stock several years before the transaction. (Memorandum Supporting Hirsch & Solomon's Objections to the Report and Recommendation, D.E. # 71). Budget claims that Hirsch and Solomon falsified accounting records to improperly inflate Diversified's net worth, thereby artificially increasing the price of the shares sold to Budget.

### B. Initial Offerings versus Secondary Transactions

Congress enacted the Securities Act of 1933 ("1933 Act") to regulate initial offerings of stocks. *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 690 (3rd Cir.1991). Initial offerings, otherwise known as distributions, occur when an established or new company publicly sells a new issue of securities. *See* Harold S. Bloomenthal, *Securities Law Handbook* 31 (1990). A year later, Congress enacted the Securities Act of 1934 ("1934 Act") "to provide for the regulation of securities exchanges and of over-the-counter markets ... [and] to prevent inequitable and unfair practices on such exchanges and markets." *In Re Data Access Systems Sec. Litigation*, 843 F.2d 1537, 1548 (3d. Cir.1988) (en banc), *cert. denied. sub. nom. Vitiello v. I. Kahlowsky & Co.*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). The 1934 Act regulates purchases and sales that occur after an initial offering. These sales are commonly known as secondary market transactions. The transaction at issue in this case was a secondary market transaction, rather than an initial offering, be-

---

1. All cases decided by the former Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981, are binding on the Eleventh Circuit and on all district courts within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

cause Hirsch and Solomon did not sell a new issue of securities to Budget.

## C. The Status of the Law Regarding the Applicability of Section 12(2) to Secondary Transactions

### 1. The Majority Rule

A number of federal courts have addressed the difficult question of whether Congress intended to regulate secondary transactions through Section 12(2) of the 1933 Act. This issue is far from settled. The uncertainty arises from both the language of Section 12(2) and the traditional view that the 1933 Act regulates initial offerings while the 1934 Act deals with subsequent trading. *Farley v. Baird, Patrick & Co., Inc.,* 750 F.Supp. 1209, 1219 (S.D.N.Y.1990).

In relevant part, Section 12(2) of the 1933 Act provides:

Any person who . . .

(2) offers or sells a security . . . by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, *by means of a prospectus or oral communication,* which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him . . .

15 U.S.C.A. § 77*l*(2) (West 1981) (emphasis added).

Although disagreement persists, a majority rule has developed among the district courts [2] and the sole appellate court [3] to consider this issue. These courts have held that Section 12(2) applies only to initial offerings, not to secondary market transactions. The courts adhering to the majority rule have advanced three strong arguments in support of this view.

First, many of the majority rule decisions, finding the plain language and purpose of the statute unclear, rely on the legislative history of the Securities Act of 1933. *See Preletz,* 749 F.Supp. at 708–09. As noted above, the legislative history supports a general bifurcation between the 1933 Act (initial offerings) and the 1934 Act (secondary transactions). Second, several courts have interpreted the phrase "prospectus or oral communication" in Section 12(2) to refer to a customary prospectus, registration statement, or other communication that accompanies a batch offering of securities. *First Union Brokerage v. Milos,* 717 F.Supp. 1519, 1522 (S.D.Fla.1989) (citing *SSH Co., Ltd. v. Shearson Lehman Bros., Ltd.,* 678 F.Supp. 1055, 1059 (S.D.N.Y.1987)).

Finally, the majority view draws support from the United States Supreme Court's fairly recent analysis of Section 17(a) of the 1933 Act. In *United States v. Naftalin,* 441 U.S. 768, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979), the Court held that Section 17(a) applies to all trading, not just initial offerings. In so holding, however, the Court noted that "[u]nlike much of the rest of the Act, [Section 17(a)] was intended to cover any fraudulent scheme in an offer or sale of securities, whether in the course of an initial distribution or in the course of market trading." *Id.* at 777–78. Majority view courts note that this clarification implies that the other sections of the 1933 Act, including Section 12(2), do not apply to all

---

**2.** *See In Re Delmarva Securities Litigation,* 794 F.Supp. 1293 (D.De.1992); *Bennett v. Bally Mfg. Corp.,* 785 F.Supp. 559 (D.S.C.1992); *T. Rowe Price New Horizons Fund, Inc. v. Preletz,* 749 F.Supp. 705, 708 n. 1 (D.Md.1990) (listing federal district courts adhering to the majority rule).

In addition, both Federal courts in the Southern District of Florida that have considered this issue have adopted the majority rule. *See First Union Brokerage v. Milos,* 717 F.Supp. 1519, 1522 (S.D.Fla.1989); *Ralph v. Prudential–Bache Securities, Inc.,* 692 F.Supp. 1322 (S.D.Fla.1988).

**3.** *Ballay v. Legg Mason Wood Walker, Inc.,* 925 F.2d 682 (3rd Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991).

fraudulent activities in the secondary markets. *See, e.g. Ballay,* 925 F.2d at 691–92.

## 2. Minority Rule

Three federal district courts have reached the opposite conclusion regarding the applicability of Section 12(2) to secondary transactions. *Farley v. Baird, Patrick & Co., Inc.,* 750 F.Supp. 1209 (S.D.N.Y. 1990); *Elysian Fed. Sav. Bank v. First Interregional Equity Corp.,* 713 F.Supp. 737 (D.N.J.1989); *Scotch v. Moseley,* 709 F.Supp. 95 (M.D.Pa.1988). These courts have reasoned that the language of Section 12(2) is clear and permits a broad interpretation of the statute to encompass all securities transactions. *See, e.g. Elysian,* 713 F.Supp. at 749.

## 3. The Majority Rule Exception

Recently, a federal district court carved an exception into the majority rule and extended coverage of Section 12(2) to a sale of stock that did not qualify as an initial offering. *Hedden v. Marinelli,* 796 F.Supp. 432 (N.D.Cal.1992). The *Hedden* court reasoned that a sale of a large amount of stock by a corporate insider is similar to an initial offering. Therefore, the court decided that Section 12(2) should apply to transactions where "a corporate insider sells his own stock in such a manner that it takes on the characteristics of a new offering." *Hedden,* 796 F.Supp. at 435.

The *Hedden* court based its development of the majority rule exception on language in the House Report accompanying the 1933 Act. *Id.* The Report states that the Act:

> "[A]ffects only new offerings of securities sold ... It does not affect the ordinary redistribution of securities *unless such redistribution takes on the characteristics of a new offering* by reason of the control of the issuer possessed by those responsible ,for the offering."

H.R.Rep. No. 85, 73d Cong., 1st Sess. 5 (1933) (emphasis added). The House Report then sets out the requirements that must be met for a secondary market transaction to take on the characteristics of a new offering. In relevant part, the House Report states:

> All the *outstanding* stock of a particular corporation may be owned by one individual or a select group of individuals. At some future date they may wish to dispose of their holdings and *to make an offer of this stock to the public.* Such a *public offering* may possess all the dangers attendant upon a new offering of securities. Whenever such a redistribution reaches significant proportions, the distributor would be in the position of controlling the issuer and thus able to furnish the information demanded by the bill. This being so, the distributor is treated as equivalent to the original issue, and, *if he seeks to dispose of the issue through a public offering,* he becomes subject to the Act.

H.R.Rep. No. 85, at 13–14 (emphasis added).

▮ Implicit in this language are three requirements for the applicability of Section 12(2) to secondary transactions: the stocks must be redistributed through a "controlling" distributor; all of the outstanding stock of the corporation must be put up for sale; and the stock must be offered to the public. The House Report also noted that "[Section 12] liabilities attach only where there has been an untrue statement of material fact ... in the registration statement or the prospectus—the basic information *by which the public is solicited.*" H.R.Rep. No. 85, 73d Cong., 1st Sess. 9 (1933) (emphasis added). Without a public offering, a transaction cannot qualify as an exception to the initial offering rule.

Applying these criteria, the *Hedden* court found that the underlying transaction partially satisfied each of the three requirements. Defendant Marinelli was the executive vice-president of the American Confectionery Corporation ("ACC"), so he was a corporate insider who possessed some control over the company. *Hedden,* 796 F.Supp. at 436. In addition, Marinelli sold all of his shares of stock, although it appears that he did not control all of ACC's outstanding stocks. *Id.* at 439. Finally,

the court indicates that Marinelli's stock sale was a public sale. *Id.*

### D. Application of the Majority Rule and the Majority Rule Exception To the Facts of this Case

 The Court finds the reasoning of the majority courts persuasive. Therefore, viewing the facts of this case through the prism of the majority rule, the Court finds that Budget cannot assert a cause of action for violation of Section 12(2). Budget argues that the majority rule exception is the controlling law in this case. The Court, however, without deciding its validity, finds the *Hedden* court exception to the majority rule inapplicable to this case. Unlike the *Hedden* court, this Court finds that the criteria that trigger application of Section 12(2) are not present in the Diversified stock sale.

In the present case, Budget alleges that Solomon & Hirsch controlled Diversified through their positions as majority owners, officers and directors. (Complaint, D.E. # 1, ¶ 7). In addition, Budget alleges that the purchase encompassed all of the outstanding common stock of Diversified. (Complaint, D.E. # 1, ¶ 9). Budget fails, however, to allege that it purchased the Diversified stock in a public sale or that Solomon and Hirsch ever offered the stocks to the public. Although Budget meets two of the three requirements needed to qualify for the initial transaction exception, it must meet all three requirements before this Court may consider the validity of the initial transaction exception. Absent a public offering, the rationale for including secondary transactions under the aegis of Section 12(2) simply disappears.

This Court must award judgment on the pleadings if the moving party establishes that no material issue of fact remains, and that it is entitled to judgment as a matter of law. *Greenberg,* 478 F.2d at 256. Budget fails to contend anywhere in its pleadings or motions that it purchased Hirsch and Solomon's stocks in response to a public offer or sale. In fact, Budget essentially admits that it purchased Diversified stocks in a private sale. (Memorandum of Law in Opposition to Defendants' Motion for Judgment, D.E. # 11, p. 4). Therefore, this Court must find that Hirsch and Solomon are entitled to judgment as a matter of law.

### CONCLUSION

Based on the foregoing analysis, it is hereby

ORDERED AND ADJUDGED that:

(1) Hirsch and Solomon's Motion for Judgment on the Pleadings as to Count III is GRANTED.

(2) Hirsch and Solomon's Second Motion for Judgment on the Pleadings as to Counts I and II is DENIED. Hirsch and Solomon's Second Motion for Judgment on the Pleadings as to Count III is DENIED AS MOOT.

(3) Gerson's Motion to Dismiss Counts VI–VIII is DENIED.

DONE AND ORDERED.